A97A1986. BIGGINS v. THE STATE.
(494 SE2d 45)

MCMURRAY, Presiding Judge.

Defendant was tried before a jury and found guilty of two counts of forgery in the first degree and one count of forgery in the second degree. The evidence adduced at his trial revealed that a tenant, Robin Mills, had been asked to watch over the home of 80-year-old Dorothy Raines ("the victim"), after the victim was incapacitated with a stroke. "Ms. Mills was letting people in the house that . . . she shouldn't have been letting in the house. . . ." The victim's checking account is a joint account with her sister, Grace Rivers Bevin. Only Ms. Bevin and Ms. Raines are authorized to sign checks on this account. Ms. Bevin also holds a durable power of attorney over her sister's affairs.

Ms. Bevin identified State's Exhibits 2, 3, and 4 as checks from the victim's checking account at the Trust Company Bank of Savannah. Check number 988 was dated January 24, 1996 and drawn to

---

the order of "Nolan Biggins" in the amount of $175. A notation on the bottom left side recites: "For roofing work." The signature of the maker is ostensibly that of "Mrs. Dorothy R. Raines." According to Ms. Bevin, she did not know defendant, she did not write that check, she never authorized it, and no roofing work was done at her sister's house at that time. Check number 991 from the victim's account was also dated January 24, 1996. This was drawn to the order of "Nolan Biggins" in the amount of $175. The notation recites "Yard work," and is signed under the name "Mrs. Dorothy R. Raines" as the maker of the check. But the victim did not sign this check and Ms. Bevin did not authorize it. Defendant performed no yard work for the victim. Check number 996 is dated "1-25-1996," and drawn to the order of "Nolan Biggins" in the amount of $175. It is also purportedly signed by the victim as the maker of the check, and contains the notation: "work." Ms. Bevin confirmed her sister did not sign that check, and that Ms. Bevin never authorized it. Ms. Bevin discovered the problem when she examined a box of unused checks. "[W]hen [she] went through them, [she] found that fifty checks were missing, and the numbers were from . . . nine hundred and something through — almost to . . . one thousand."

Tommy Thomson owns "Harry's Liquorama on Pennsylvania and Capital," in Savannah, Georgia. He identified defendant as the person who cashed State's Exhibit 2, check number 988. Defendant showed Mr. Thomson some photograph identification and told him the check was for some roof repair. Mr. Thomson thought the victim "had a non listed [telephone] number at the time, and [Mr. Thomson] couldn't reach her." Defendant gave Mr. Thomson "a number of her daughter to call and verify the work had been done to the house." Mr. Thomson called that number to verify "if work had been done . . . at this address, 631 West 42nd Street, some roofing work had been done and they said 'Yes.'" After giving defendant the $175 less a small percentage for cashing, Mr. Thomson "got the check back in the mail, and it had been stamped 'Payment Stopped.'" Mr. Thomson identified State's Exhibit 5 as the identification card defendant used when he cashed check number 988.

Betty Milton, a Customer Service officer with Sun Trust Bank on Skidaway Road, identified defendant as the man who attempted to cash State's Exhibit 3, check number 991. When defendant "asked [Ms. Milton] to approve this [check], [she] went to the computer and pulled the account up to make sure the funds were available. And at that time, [Ms. Milton] noticed that there was a caution on the account." "It read to alert police or call [the bank] security man, and it had a little notation that checks had been stolen." While Ms. Milton telephoned Mr. Poole, the bank security officer, defendant "took his ID from [Ms. Milton] and left the bank, and left the check in [her]

hands." Ms. Milton forwarded "the [video]tape that had his [defendant's] picture on it . . . downtown to Mr. Poole."

Defendant subsequently "called [back], stating that he had had an emergency page, he had to leave. He wanted to know if he came back to the bank, could we cash the check for him, and he was told that that would be no problem." When defendant returned, Ms. Milton stalled for time by telling defendant that she "did not know where it [check number 991] was at that time," awaiting the arrival of the police. Defendant inquired "if he could get her [the victim] to write another check, could [Ms. Milton] cash it for him, and [Ms. Milton] said that would be no problem." Defendant then left the bank for a second time. Ms. Milton "was able to get the tag number off the car and . . . the color of the car. . . ." There were "[t]hree [occupants], including [defendant]." Corporal Devon Kennedy of the Savannah Police Department arrived after defendant left the second time. When defendant reentered the bank, he "had already gotten . . . ten or twelve feet inside the doorway of the bank, and as soon as we [Corporal Kennedy and another officer] stepped to the doorway and made eye contact, [defendant] looked surprised." Defendant "immediately spun around and started walking back out of the bank." Defendant was arrested in the parking lot. A search incidental to that arrest turned up defendant's "parole ID card and another check on the account of [the victim]. That was check number [996]. It was in his back left pants pocket."

Defendant's amended motion for new trial was denied and this appeal followed. *Held*:

1. Defendant's photographic identification card was issued by the Georgia Department of Corrections. Defendant moved in limine to preclude reference to "the fact that it was a prison ID. . . ." The denial of that motion is enumerated as error.

Generally, evidence of a criminal defendant's bad character is legally irrelevant. OCGA § 24-2-2; *Ledford v. State*, 202 Ga. App. 694 (1), 695 (415 SE2d 693). The better practice, by far, is for the State's Attorney to redact such arguable indications of extrinsic crimes on the State's own initiative. *Brewer v. State*, 219 Ga. App. 16, 18 (3) (463 SE2d 906). See also *Wilson v. State*, 222 Ga. App. 818, 820 (476 SE2d 97) (Beasley, C. J., concurring specially). Nevertheless, in our view, this arguable evidence of legally irrelevant extrinsic crimes does not create reversible error in the case sub judice. " 'Evidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue. [*Johnson v. State*, 260 Ga. 457 (2), 458 (396 SE2d 888).]' " *Hayes v. State*, 265 Ga. 1, 3 (4) (453 SE2d 11). Here, the photographic identity card defendant proffered was relevant to the identity of the perpetrator and to the credibility of the witnesses. There is no refer-

ence to any actual charge or conviction, nor does the card indicate that defendant is a parolee. We liken these circumstances to the admission of photographs from the so-called Rogue's Gallery, which does not require a new trial. *Cooper v. State*, 182 Ga. 42 (2) (184 SE 716). Accord *Sapp v. State*, 222 Ga. App. 415, 418 (4) (474 SE2d 233) (fingerprint cards).

2. Defendant urges the general grounds, arguing the checks were already filled out when he received them from Robin Mills.

"Both knowledge and intent to defraud may be proven by circumstantial evidence. [Cit.]" *Crowder v. State*, 218 Ga. App. 630, 631 (2) (462 SE2d 754). "' "Knowingly passing as genuine a forged instrument is conclusive of the intent to defraud." *Jordan v. State*, 127 Ga. 278 (4) (56 SE 422) (1906).' *Matula v. State*, 264 Ga. 673, 674 (2) (449 SE2d 850)." (Punctuation omitted.) *Crowder v. State*, 218 Ga. App. 630, 631 (2), 632, supra.

The evidence in the case sub judice was sufficient under the standard of *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) to authorize the jury's verdicts that defendant is guilty beyond a reasonable doubt of forgery in the first degree as alleged in the first two counts of the indictment. *Crowder v. State*, 218 Ga. App. 630, 631 (1), 632, supra. The evidence is further sufficient to authorize the jury's verdict that defendant committed forgery in the second degree as charged in Count 3, by his possession of a forged instrument with the intent to defraud.

*Judgment affirmed. Senior Appellate Judge Harold R. Banke concurs. Smith, J., concurs in the judgment only.*

DECIDED NOVEMBER 3, 1997 —
RECONSIDERATION DENIED NOVEMBER 12, 1997 —

*C. Jackson Burch*, for appellant.

*Spencer Lawton, Jr., District Attorney, Thomas M. Cerbone, Assistant District Attorney*, for appellee.