## A10A0154. WILSON v. THE STATE.
### (698 SE2d 6)

DOYLE, Judge.

Following a jury trial, Dwayne Robert Wilson appeals his conviction of aggravated assault (two counts), burglary, false imprisonment, and felony theft by taking, contending that (1) the evidence

---

was insufficient to support the guilty verdict, (2) the trial court improperly commented on the evidence, and (3) the trial court erroneously limited his cross-examination of a witness. Discerning no reversible error, we affirm.

Viewed in support of the verdict,[1] the record shows that in April 2007, Wilson moved into a townhouse leased by his girlfriend, Angela Russell. Wilson was not on the lease and had access to the house only by accompanying Russell or by borrowing her key. In May 2007, the relationship faltered, and Russell decided that Wilson "needed to leave." He refused to leave, and she called the police. The police came, and after he pleaded with her to let him stay, she eventually allowed him to sleep in her basement on the condition that he leave the next day.

The following day, unbeknownst to Russell, Wilson slashed her car tire so that she would be unable to take him to a relative's house to stay. They agreed that Wilson would sleep in the basement one more night and he would then leave the next day. The following day, as Russell left the house to go to work, Wilson left with her, and she locked the door with the only key. Later that day, Wilson called her at work twice from her home telephone, and she demanded to know how he got in her house.

When Russell returned home from work that night, Wilson immediately confronted her at the front door and threatened to kill her. He held a butcher knife in one hand and a hammer in the other, and he hit her in the head with the hammer, causing contusions, and he stabbed her once in her side with the knife. Wilson repeatedly pushed Russell into the foyer away from the doorway, prohibiting her escape, and eventually threw her down the basement stairs, ordering her not to leave and attempting to lock her in. Russell eventually calmed Wilson enough that he allowed her to remove her shirt to inspect her stab wound, at which point she fled partially clothed through a basement door, to a neighbor's house, where she called police. When she returned to her house the next day, she discovered several items missing, including a television, three designer handbags, stereo equipment, speakers, a comforter, and furniture.

Wilson was later arrested and indicted with the crimes stemming from the event. A jury found him guilty of all charges except one of three aggravated assault charges, and two burglary charges were merged for sentencing purposes. Following the denial of his motion for new trial, Wilson filed this appeal.

1. Wilson contends that the evidence did not suffice to support the guilty verdict as to each count. We disagree.

---

[1] See *Rankin v. State*, 278 Ga. 704, 705 (606 SE2d 269) (2004).

When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[2] It is the function of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence.[3] "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld."[4]

(a) *Aggravated assault*. Under OCGA § 16-5-21 (a) (2),

> [a] person commits the offense of aggravated assault when he or she assaults . . . [w]ith a deadly weapon or with any object, device, or instrument which, when used offensively against a person, is likely to or actually does result in serious bodily injury. . . .

OCGA § 16-5-20 (a) defines "assault" as when a person "[a]ttempts to commit a violent injury to the person of another; or . . . [c]ommits an act which places another in reasonable apprehension of immediately receiving a violent injury."

Wilson argues that Russell's trial testimony that she did not know precisely how she was stabbed when Wilson surprised her at her door demonstrated that she lacked apprehension of receiving a violent injury, particularly in light of his own testimony that she was cut by accident. This argument essentially attacks the credibility of Russell's testimony, because Russell also testified that Wilson surprised her from inside her house, that Wilson threatened to kill her while holding a knife and hammer, and that "when I put my hand up like this, I was pushing him with this hand, and I got stabbed under my arm." This was sufficient to support the aggravated assault by knife conviction, because a jury could reasonably conclude that when Wilson threatened Russell's life while holding a knife and she reached up with her hand, she was in reasonable apprehension of immediately receiving a violent injury.[5] Even if a victim offers an

---

[2] (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

[3] See id.

[4] (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

[5] See *Preston v. State*, 300 Ga. App. 433, 434 (685 SE2d 420) (2009); *Gough v. State*, 236 Ga. App. 568, 569 (1) (512 SE2d 682) (1999).

entirely different account than the defendant, that is

> of no consequence on appeal because we do not speculate as to which evidence the jury chose to believe. Instead, the credibility of witnesses and the weight to be given their testimony are questions for the trier of fact, and we do not determine or question how the jury resolved any conflicts in the evidence.[6]

Based on the evidence, a rational trier of fact could have inferred that Russell apprehended the knife attack. The evidence likewise supported Wilson's conviction for aggravated assault with a hammer.[7]

(b) *Burglary*. Under OCGA § 16-7-1, a "person commits the offense of burglary when, without authority and with the intent to commit a felony or theft therein, he enters or remains within the dwelling house of another. . . ." Wilson argues that the evidence failed to show that he lacked authority to be in Russell's home, as required to prove the burglary charge. We disagree.

Russell testified that Wilson was not on her lease, did not have a key, and did not have permission to be in her home. This, coupled with Russell's other testimony, was sufficient to prove that Wilson had, without authority, entered her house to threaten Russell and take her property.[8]

(c) *Felony theft by taking*. Under OCGA § 16-8-12 (a) (1), theft by taking can be punished as a felony, as was done here, if the stolen property exceeded $500 in value.[9] Wilson argues that the State failed to adequately prove the value of Russell's stolen property because Russell's cost price testimony was not proof of value at the time of the theft. However, in addition to cost price, Russell also testified about the condition and age of each item at the time of the theft: television in good condition purchased two years prior for $897; stereo in good condition purchased four years prior for $150; speakers in good condition purchased ten years prior for $1,000; three designer handbags in "brand new" condition purchased five months prior for a total of $983; and an unused comforter purchased

---

[6] (Punctuation omitted.) *Cochran v. State*, 277 Ga. App. 251, 254 (1) (626 SE2d 217) (2006).

[7] See *Curtis v. State*, 168 Ga. App. 7, 8 (5) (308 SE2d 31) (1983) ("Testimony by the victim that appellant beat her head with a hammer, coupled with testimony concerning the victim's head injuries and the presence of a hammer at the scene of the crime, was sufficient to convince a rational trier of fact of the essential elements of the crime of aggravated assault beyond a reasonable doubt.").

[8] See *Powell v. State*, 170 Ga. App. 360, 361 (317 SE2d 338) (1984).

[9] See *Conley v. State*, 281 Ga. App. 841, 842 (1) (637 SE2d 438) (2006).

one month prior for $149. After reciting these facts, Russell then testified that the stolen items had a total value of more than $500 at the time they were stolen.

While it is true that evidence of purchase price, standing alone, is insufficient to establish stolen property's value,[10]

> [c]ost price of an item coupled properly with other evidence such as a showing of the condition of the item at the time of purchase and at the time its value is in issue may be admitted as an element upon which an opinion may be formed as to the item's value. . . . [D]irect proof of value is not essential in prosecutions for theft by taking but proof of value may be shown by inference.[11]

And "[a]n owner does not have to be an expert to testify as to the value of [her] property . . . , provided [s]he has experience or familiarity with such values."[12]

Here, Russell's testimony as to the age and condition of the stolen items coupled with the cost price of the items was admissible as a basis for her opinion that the value of the stolen items was more than $500. Therefore, the jury was authorized to find that the value of the goods Wilson stole was more than $500.[13]

(d) *False imprisonment.* Under OCGA § 16-5-41 (a), a "person commits the offense of false imprisonment when, in violation of the personal liberty of another, he arrests, confines, or detains such person without legal authority." Wilson contends that the evidence was insufficient to convict him of false imprisonment, because he only blocked Russell's access to the front door, leaving other avenues of escape. However, Russell testified that Wilson repeatedly pushed her away from the front door, and "I just couldn't get to the door. [Wilson] stood right in front of the door the whole time." Wilson eventually threw her down the stairs into the basement, where he attempted to lock her in. This was sufficient to prove false imprisonment because "all that is required is there be an arrest, confine-

---

[10] See *Dunbar v. State*, 146 Ga. App. 136, 136-137 (2) (245 SE2d 486) (1978).

[11] (Citations omitted.) *Ragsdale v. State*, 170 Ga. App. 448, 449-450 (317 SE2d 288) (1984).

[12] *Williams v. State*, 246 Ga. App. 347, 352 (2) (540 SE2d 305) (2000).

[13] See *Perdue v. State*, 300 Ga. App. 588, 589-590 (1) (685 SE2d 489) (2009) ("the testimony of the owner of the value of stolen items based upon his experience in buying them, coupled with the jury's awareness of the value of everyday objects, is sufficient to allow the jury to consider such opinion evidence and make reasonable deductions exercising their own knowledge and ideas"). Compare *Dunbar*, 146 Ga. App. at 136 (2) (insufficient evidence to support felony punishment because the victim testified only about retail price and "did not state how long he had owned the [stolen item], what condition it was in, whether it had deteriorated or depreciated, or anything similar").

ment or detention of the person, without legal authority, . . . against his or her will."[14] That Russell was ultimately able to escape from the basement does not render the evidence insufficient.[15]

2. Wilson also contends that the trial court erred by improperly commenting on the evidence. We disagree.

At trial, the following colloquy occurred during Wilson's cross-examination of Russell:

Q: Now, you mentioned that October was the month that you always wanted to be married in?
A: Correct.
Q: But there did come a time you and [Wilson] discussed a marriage in an actual October?
A: No.
Q: You never planned to get married in October of 2007?
A: No.
Q: Or 2006?
A: No.
Q: When was [it] that you and [Wilson] visited the bridal store?
A: April.
Q: Of which year?
A: 2007.
Court: I'm — I guess I'm just sitting here wondering how much detail we're going to go into about everything they did. You could talk about every place they ever went. And I'm just wondering how visiting a bridal store helps the jury determine the guilt or innocence of the Defendant.
Wilson's counsel: I think it helps to determine the issue related to . . . [burglary] and that being authority.
Court: Well, I'm not trying — honestly I'm not trying to give you a hard time. So going to a bridal store at some unknown time helps decide whether it was authority?
Wilson's counsel: Correct.
Court: To be at the apartment that day?
Wilson's counsel: Correct.
Court: Go ahead. Do you understand what I'm saying? You could talk about every thing they ever did, every time they went to see a movie, every time they went to dinner.

---

[14] (Punctuation omitted.) *Turner v. State*, 253 Ga. App. 760, 761 (1) (560 SE2d 539) (2002).

[15] See, e.g., *Port v. State*, 295 Ga. App. 109, 110 (1) (671 SE2d 200) (2008) (evidence sufficient despite victim's eventual escape through window).

Wilson's counsel: I understand. And specifically I'm trying to talk about the visit to the bridal store in April of 2007.

First, we note that Wilson's counsel resumed the cross-examination without objection or motion for mistrial, so this enumeration is waived.[16] Furthermore, the colloquy reflects the trial court's questioning as to the admissibility of evidence on relevancy grounds, and the trial court expressly instructed the jury that no ruling or comment by the judge during trial was intended to express any opinion about the facts of the case, the credibility of the witnesses, the evidence, or guilt or innocence of Wilson. It follows that this enumeration lacks merit.

3. Finally, Wilson contends that the trial court committed reversible error by improperly limiting his cross-examination of Russell. We disagree.

During cross-examination about a prior difficulty between Russell and Wilson, Wilson sought to elicit testimony to demonstrate his fearful state of mind in support of a self-defense theory.[17] Wilson requested that the jury be removed so he could obtain a ruling on the admissibility of Russell's prior statement to Wilson that she "pulled a knife on a n———r before and [only got] probation." The trial court allowed Wilson to ask Russell if she made the statement, but limited the testimony to exclude any reference to Russell having received probation. Wilson resumed the cross-examination and asked Russell if she had ever made the statement. After Russell denied doing so, Wilson asked her if she knew a man named Kevin Dempsey (who was allegedly a prior boyfriend and victim), and Russell responded that she did. Wilson then asked what her relationship was to Dempsey, and the State objected on relevancy grounds. After a conference outside the presence of the jury, the trial court sustained the objection.

Wilson argues that the trial court erred by refusing to allow him to ask the one additional question establishing her relationship to Dempsey in order to show that Russell told Wilson that she had been in a similar altercation before and had allegedly cut Dempsey with a knife, suffering little consequence.

The admission of evidence is a matter which rests largely within the sound discretion of the trial judge. However, the Georgia rule favors the admission of any relevant evidence, no matter how slight its probative value, and evidence is

---

[16] See *Whitaker v. State*, 287 Ga. App. 465, 468 (3) (652 SE2d 568) (2007) (finding waiver because defendant "did not make a contemporaneous objection to [the trial court's] alleged comment upon the evidence or move for a mistrial").

[17] A jury instruction on self-defense was requested and given.

relevant if it renders the desired inference more probable than it would be without the evidence.[18]

"Assuming without deciding that the trial court's restriction of cross-examination on this issue was erroneous, we nevertheless find the error harmless. If it is highly probable that the error did not contribute to the judgment, then the error is harmless."[19] The trial court had already allowed Wilson to question Russell about her prior statement to Wilson that she "cut a n——r before," and Wilson testified that (i) Russell had bragged to him about having "already stabbed somebody before," and (ii) he himself had previously been cut while taking a knife from Russell. Therefore, explaining Dempsey's relationship to Russell was of little additional benefit, and exclusion of Russell's answer does not warrant a new trial.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED JUNE 10, 2010 —
RECONSIDERATION DENIED JULY 1, 2010.

*Edwin J. Wilson*, for appellant.
*Daniel J. Porter, District Attorney, Justin D. Unger, Assistant District Attorney*, for appellee.

---

[18] (Citations and punctuation omitted.) *Hudson v. State*, 273 Ga. 124, 126 (2) (538 SE2d 751) (2000).

[19] (Punctuation omitted.) *Anaya-Plasencia v. State*, 283 Ga. App. 728, 732 (2) (642 SE2d 401) (2007).