## A10A1361. FERGUSON v. THE STATE.

(704 SE2d 470)

BLACKWELL, Judge.

Derrick Ferguson was tried by a jury and was convicted of several crimes, including two counts of theft by taking a motor vehicle in violation of OCGA § 16-8-2. Ferguson appeals from his conviction and the denial of his motion for new trial, contending that (1) the evidence adduced at trial is insufficient to sustain his conviction on one count of theft by taking a motor vehicle and (2) his trial counsel failed to object to the admission of certain "bad character" evidence and, therefore, was ineffective. We disagree and affirm.

Viewed in the light most favorable to the verdict,[1] the record shows that, on November 24, 2006, Ferguson was living at a residential facility in Dalton operated by Providence Ministries. Early that afternoon, a woman parked her Toyota Camry in the front of the thrift store that Providence Ministries operated at the same location and went into the store to shop, leaving her car unlocked and the keys in the car. When she later exited the store, she discovered that her car had been stolen.

The premises of Providence Ministries were monitored by a video surveillance system, and police officers reviewed video recordings made at or around the time of the theft as a part of their investigation. These recordings, which were admitted at trial, show a man — wearing khaki pants, a light shirt, and a dark jacket — walking by the parked Camry several times and, on at least one occasion, looking into it. The same recordings show a man — wearing khaki pants, a light shirt, and a dark object wrapped about his head — enter the vehicle a few minutes later and drive away. Late on the afternoon of November 24, a police officer spoke with Ferguson, who was wearing khaki pants, a light shirt, and a blue jacket. Ferguson admitted to the officer that he was the man depicted in the recordings walking near the Camry,[2] but he denied stealing the car. Ferguson was not arrested at that time.

Later that night, police officers responded to a report of suspicious activity at a used car lot in Dalton. As one officer approached and entered the lot to investigate, he observed someone enter and start a Honda Accord parked on the lot. Although the officer twice identified himself as a police officer and commanded the driver of the

---

[1] On an appeal from a criminal conviction, the defendant no longer enjoys the presumption of innocence, and we view the evidence in the light most favorable to the verdict. *Aguilera v. State*, 293 Ga. App. 523, 523 (667 SE2d 378) (2008).

[2] An employee of Providence Ministries testified at trial that she saw Ferguson in the parking lot adjacent to the thrift store around the time of the theft.

car to stop, the driver drove off the lot, striking two vehicles and a fence in the process.

Another responding officer joined the pursuit of the Accord and followed it to a parking lot, where the officer saw a man exit the car with a bag and run toward a nearby fence. Shortly thereafter, the officer discovered Ferguson, wearing khaki pants and a dark jacket and lying on the ground in a nearby, fenced-in area, which was only a few blocks from Providence Ministries. Officers also located a bag, which contained items that belonged to Ferguson, near the stolen Accord. Ferguson was arrested and charged with the theft of both vehicles and related crimes.

A jury convicted Ferguson of the theft of both cars, as well as fleeing to elude a police officer in violation of OCGA § 40-6-395 (a), second-degree criminal damage to property in violation of OCGA § 16-7-23 (a) (1), obstruction of a law enforcement officer in violation of OCGA § 16-10-24 (a), and leaving the scene of an accident in violation of OCGA § 40-6-270 (c) (1). Ferguson then filed a motion for a new trial, which was denied. This appeal followed.

1. Ferguson claims that the evidence adduced at trial is insufficient to prove beyond a reasonable doubt that he is the person that stole the Camry. We disagree. When we consider whether the evidence is sufficient to sustain a conviction, we ask whether any rational jury could find, in the evidence adduced at trial, proof of guilt beyond a reasonable doubt, viewing the evidence in the light most favorable to the verdict. See *Cutrer v. State*, 287 Ga. 272, 274 (695 SE2d 597) (2010); see also *Wilson v. State*, 304 Ga. App. 743, 745 (1) (698 SE2d 6) (2010). As we have said before, "[i]t is the function of the jury, not this Court, to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the evidence." *Wilson,* supra, 304 Ga. App. at 745 (1). So, if the record contains some competent evidence to prove each element of the crime of which the defendant was convicted, even though that evidence may be contradicted, we must uphold the conviction. *Cooper v. State*, 299 Ga. App. 199, 200 (682 SE2d 154) (2009). Here, the evidence is sufficient to permit a rational jury to conclude beyond a reasonable doubt that Ferguson stole the Camry.

Although Ferguson argues otherwise, this is not a case in which the evidence merely shows that Ferguson was present at the place from which the Camry was stolen. The theft of the Camry was recorded by video surveillance cameras, and the jury was shown a recording of the theft, which depicts the thief walking across a parking lot with his face concealed, approaching the Camry, entering the Camry, and only seconds later, driving it away. The jury also saw video surveillance recordings taken in the same vicinity a few minutes before the Camry was stolen, which show Ferguson — who

admitted to a police officer that he was the person depicted in these recordings — walking about the facility from which the Camry was stolen and walking past the Camry more than once. The jury, therefore, was afforded the opportunity to consider how the thief was dressed, his complexion, his size and build, his gait and posture, and other characteristics of his appearance and compare them with nearly contemporaneous recordings of Ferguson.[3]

Identity is a question of fact for the jury to decide. *Brown v. State*, 277 Ga. App. 169, 170 (1) (626 SE2d 128) (2006). We have said before that "it is not beyond the ken of the average juror to decide as a matter of fact whether the identity of a person in a video is the defendant." *Carter v. State*, 266 Ga. App. 691, 693 (2) (598 SE2d 76) (2004); see also *Moses v. State*, 252 Ga. App. 23, 24 (555 SE2d 246) (2001) ("[T]he jury had access to the videotapes of the transactions, viewed them twice, and could determine the identity of the persons shown therein."). And in a case in which a robbery of a convenience store was recorded by a surveillance camera, we held that the evidence of identity was sufficient because the jury had the opportunity to examine surveillance camera photographs of the robber and compare them with the defendant as he appeared at trial. See *Brown*, supra, 277 Ga. App. at 171 (1). In this case, the jury not only had the opportunity to compare a video recording of the car thief with Ferguson as he appeared at trial, it also had the opportunity to compare the thief with Ferguson as he appeared on the date of the theft and as recorded by the same video surveillance system. By comparing the two, a rational jury could conclude beyond a reasonable doubt that Ferguson was the person who stole the Camry.

Moreover, other aspects of the evidence support the jury's identification of Ferguson as the thief. Given the way in which the thief, as depicted in the video recordings, confidently entered the Camry and almost immediately drove away, the jury properly could infer that the thief knew that the keys were in the car. The video recordings of Ferguson show him look toward the car as he walked past its passenger door only minutes before it was stolen, from which the jury might properly infer that Ferguson had the opportunity to see that the keys were in the car.

---

[3] Although it is not our place to weigh this evidence as if we were the trier of fact, we note that the video recordings show both Ferguson and the thief dressed in similar clothing. Moreover, Ferguson is depicted wearing a dark-colored jacket and later carrying a dark-colored object (that could be, for instance, the same jacket), and the thief is depicted wearing a dark-colored object (that could be, again, the same jacket) wrapped about his head. In addition, based on the video recordings, a rational jury could conclude easily that both Ferguson and the thief are of a similar size, similar build, and similar complexion. According to the testimony of one witness at trial, Ferguson did not look like any other person residing at Providence Ministries at the time the Camry was stolen.

The jury also was presented with evidence that Ferguson stole the Accord only hours after the Camry was stolen, and Ferguson does not contend that the evidence is insufficient to prove that he stole the Accord. Both crimes occurred in the same city and on the same date, and both involved the theft of foreign-made, mid-size sedans. The State presented evidence from which the jury could infer that, like the Camry, the keys had been left in the Accord at the time it was stolen, and the keys from both cars were missing when the cars were recovered. Given these similarities, evidence of either theft would be admissible as a similar transaction at the trial of the other to show bent of mind, intent, and course of conduct. See *Mattox v. State*, 287 Ga. App. 280, 283 (1) (651 SE2d 192) (2007) (where defendant was charged with entering and attempting to steal a pickup truck and sport-utility vehicle, trial court properly admitted evidence of a similar transaction involving the theft of a pickup truck using similar methods, where the crimes charged and the similar transaction occurred "during the same month [and] in the northern metropolitan Atlanta area"). Accordingly, the evidence that Ferguson stole the Accord supports his conviction for stealing the Camry.

Finally, Ferguson testified at trial. Although he denied that he stole either of the two cars, the jury was entitled to weigh his testimony against the other evidence in the case, assess his credibility, and determine whether his testimony was truthful. And if the jury concluded that his testimony was not truthful, as we must assume it did, the jury was entitled to take his untruthfulness as substantive and affirmative evidence of his guilt. See *Wright v. West*, 505 U. S. 277, 296 (II) (112 SC 2482, 120 LE2d 225) (1992) ("As the trier of fact, the jury was entitled to disbelieve West's uncorroborated and confused testimony. . . . And if the jury did disbelieve West, it was further entitled to consider whatever it concluded to be perjured testimony as affirmative evidence of guilt. . . ."); see also *United States v. Jiminez*, 564 F3d 1280, 1285 (II) (11th Cir. 2009) (same).

"A proper inference the jury can make from disbelieved testimony is that the opposite of the testimony is true." *United States v. Hasner*, 340 F3d 1261, 1272 (II) (D) (1) (11th Cir. 2003). As Lord Chief Justice Cockburn put it, quoted with approval by our own Supreme Court:

> The conduct of a party to a cause may be of the highest importance in determining whether the cause of action in which he is a plaintiff, or the ground of defence, if he is defendant, is honest and just; just as it is evidence against a prisoner that he had said one thing at one time and another at another, as shewing that the recourse to falsehood leads fairly to an inference of guilt. Anything from which such an

YALE LAW LIBRARY

inference can be drawn is cogent and important evidence with a view to the issue. So, if you can show that a plaintiff has been suborning false testimony, and has endeavored to have recourse to perjury, it is strong evidence that he knew perfectly well his cause was an unrighteous one. I do not say that it is conclusive; I fully agree that it should be put to the jury, with the intimation that it does not always follow, because a man, not sure he shall be able to succeed by righteous means, has recourse to means of a different character, that that which he desires, namely, the gaining of the victory, is not his due, or that he has not good ground for believing that justice entitles him to it. It does not necessarily follow that he has not a good cause of action, any more than a prisoner's making a false statement to increase his appearance of innocence is necessarily a proof of his guilt; *but it is always evidence* which ought to be submitted to the consideration of the tribunal which has to judge of the facts.

(Emphasis supplied.) *Ga. R. &c. Co. v. Lybrend*, 99 Ga. 421, 435 (27 SE 794) (1896) (quoting *Moriarity v. London &c. R. Co.*, 5 QB 319). Because we must view the evidence in the light most favorable to the State, we must assume that the jury concluded that Ferguson was untruthful when he denied stealing the Camry, and we must allow that the jury could infer from the untruthfulness of his testimony that Ferguson did, in fact, steal the Camry.

Viewed in its entirety, we find that the evidence was sufficient to permit a rational jury to conclude beyond a reasonable doubt that Ferguson stole the Camry.

2. We also find no merit in Ferguson's claim that he was deprived at trial of the effective assistance of counsel because his lawyer failed to object to the admission of evidence that reflected upon Ferguson's character. The standard by which we assess a claim of ineffective assistance of counsel is well settled:

To prevail on a claim of ineffective assistance of trial counsel, a defendant bears the burden of showing both that trial counsel was deficient and that he was prejudiced by the deficiency. To demonstrate deficient representation, a convicted criminal defendant must show that counsel's representation fell below an objective standard of reasonableness. Such a defendant must overcome the strong presumption that counsel's performance fell within a wide range of reasonable professional conduct and that counsel's decisions were made in the exercise of reasonable profes-

sional judgment. The reasonableness of counsel's conduct is examined from counsel's perspective at the time of trial and under the circumstances of the case.

(Citation and punctuation omitted.) *Smith v. State*, 302 Ga. App. 128, 133 (2) (690 SE2d 449) (2010). When we consider a claim of ineffective assistance, we defer to findings of fact by the trial court unless clearly erroneous, but we review the trial court's application of the law to those facts de novo. *Farris v. State*, 293 Ga. App. 674, 675 (667 SE2d 676) (2008).

At trial, the bag that police officers recovered near the stolen Accord was admitted as evidence. As proof that this bag belonged to Ferguson, a letter found inside the bag — which is addressed to Ferguson at Dooley State Prison — also was admitted, and Ferguson's lawyer did not object to the admission of the letter. Because the letter indicates that Ferguson had been in prison at one time, Ferguson says that it is inadmissible "bad character" evidence and that his lawyer should have objected. We disagree.

As we have said before, "[e]vidence which is relevant to an issue in a case is not rendered inadmissible by the fact that it incidentally puts the defendant's character in issue." *Biggins v. State*, 229 Ga. App. 297, 299 (1) (494 SE2d 45) (1997). Here, the letter admitted at trial was relevant and admissible to prove identity, inasmuch as the letter tends to prove that the bag found near the stolen Accord belonged to Ferguson, and this fact tends to prove that Ferguson was, in fact, the man who stole the Accord. See *Smith*, supra, 302 Ga. App. at 133 (1) (c) (mugshots admissible to show clothing worn by defendant at the time of his arrest); *McNeil v. State*, 257 Ga. App. 147, 148 (570 SE2d 433) (2002) (inmate identification documents admissible to prove that defendant gave a false name to police); *Biggins*, supra, 229 Ga. App. at 299 (1) (inmate identification card admissible in forgery case as "relevant to the identity of the perpetrator and to the credibility of the witnesses"); *Wilson v. State*, 222 Ga. App. 818, 819 (476 SE2d 97) (1996) (inmate identification card admissible to show ownership of nearby contraband). Because the letter addressed to Ferguson was relevant and admissible, an objection to its admission would have been futile, and Ferguson's lawyer was not ineffective for failing to object. See *Henderson v. State*, 300 Ga. App. 478, 482 (3) (685 SE2d 454) (2009); see also *Bagwell v. State*, 270 Ga. 175, 178 (1) (c) (508 SE2d 385) (1998) (failure to object to otherwise relevant evidence not ineffective); *Williams v. State*, 290 Ga. App. 841, 845 (4) (b) (660 SE2d 740) (2008) ("Trial counsel cannot be deemed ineffective for failure to make a futile or meritless objection.").

For these reasons, we affirm the judgment of the trial court.

238

*Judgment affirmed. Andrews, P. J., Smith, P. J., Mikell, Adams and Dillard, JJ., concur. Barnes, P. J., concurs in part and dissents in part.*

BARNES, Presiding Judge, concurring in part and dissenting in part.

I concur fully with Division 2 of the majority opinion.[4] However, because I believe that the evidence was insufficient to sustain Ferguson's conviction for the theft of the Camry, I must respectfully dissent to Division 1.

Mere presence of one where a crime is committed, without more, will not support a conviction. *Sweat v. State*, 119 Ga. App. 646 (168 SE2d 654) (1969). So too, unexplained and suspicious circumstances are not sufficient to convict the defendant. *Rodgers v. State*, 213 Ga. 797, 803 (102 SE2d 10) (1958); *Donaldson v. State*, 222 Ga. App. 532, 533 (474 SE2d 722) (1996) ("[S]peculation and conjecture will not sustain a conviction.") (citation and punctuation omitted).

In cases such as this where all of the evidence is circumstantial, the proper standard is whether the evidence is consistent with the hypothesis of guilt and excludes every other reasonable hypothesis save Ferguson's guilt. "[T]he evidence need not exclude every inference or hypothesis except guilt of the accused, but only reasonable inferences . . . , beyond reasonable doubt, of guilt." (Citations and punctuation omitted.) *Fitz v. State*, 201 Ga. App. 83, 85 (410 SE2d 186) (1991).

The theft of the Camry was based solely on evidence that Ferguson was seen in the area where the theft of the Camry occurred; evidence that Ferguson conceded was true. Moreover, the fact that he was staying at Providence Ministries, the residential facility affiliated with the thrift store, substantiated his legitimate presence in the area. The video surveillance tape merely reflected that Ferguson was in the area as well.

The surveillance tape entered into evidence at trial showed ten clips of varying lengths between the times of 12:43 p.m., when the Camry was parked in front of the thrift store and 1:26 p.m., when the vehicle was stolen. The clips showed a man in khaki pants wearing a light shirt that at times appeared to be light blue. The man holds a

---

[4] Although a different result is not warranted in this case, it is important to reiterate the inherently prejudicial nature of the letter addressed to Ferguson at Dooley State Prison as it raises "an inference that an accused who acted in a certain manner on one occasion is likely to have acted in the same or in a similar manner on another occasion and thereby putting the accused's character in issue." *Bryant v. State*, 204 Ga. App. 856, 861 (3) (420 SE2d 801) (1992). In this circumstance, given that the letter was relevant only to prove Ferguson's identity, the prison's address should have been redacted from the letter.

white bag in some of the clips, papers in others, and in some of the clips he appears to have a dark object over his shoulder that may either be a jacket or a bag. In at least two of the clips the man is not carrying anything. There are time lapses from seconds to over 15 minutes in the clips. The surveillance tape does not show what happened during these stretches of time.

Likewise, there is no indication of whether other people walked by the Camry during this 45-minute time period because only the clips of Ferguson were extracted from the surveillance tape to compare with the theft suspect. While it is certainly true as the majority notes, that jurors determine questions of fact such as identity, it is beyond the ken of the most astute jury to compare Ferguson as he appeared at trial with the video of a man with a dark object wrapped around his head and declare that they are one and the same. In the cases cited by the majority for this proposition, *Carter v. State*, supra, and *Moses v. State*, supra, the defendant was identified from an image on a videotape, not his gait, complexion or clothing.

The only other evidence of Ferguson's identity was the theft of the Honda, and "[g]enerally in a criminal trial, proof that the defendant committed a distinct, independent, and separate offense is highly and inherently prejudicial." (Citation and punctuation omitted.) *Johnson v. State*, 275 Ga. 508, 510-511 (3) (570 SE2d 292) (2002).

While it is true that the appellate courts do not undertake to weigh evidence, we must, however, look to see if there is sufficient *competent* evidence to support the verdict. *Pierce v. State*, 243 Ga. 454 (1) (254 SE2d 838) (1979).

Thus, as I believe the evidence was not sufficient to support Ferguson's conviction for the theft of the Camry, I must respectfully dissent from the majority opinion as to Division 1.

DECIDED DECEMBER 1, 2010.

*Michael A. Corbin*, for appellant.
*Kermit N. McManus, District Attorney, John S. Helton, Assistant District Attorney*, for appellee.