A11A0602. HOWARD v. THE STATE.
(714 SE2d 255)

BLACKWELL, Judge.

Kenneth Howard was tried by a Lowndes County jury and convicted of kidnapping[1] and possession of a firearm during the commission of a felony.[2] He now appeals, contending that the evidence adduced at his trial is insufficient to sustain his convictions, that the prosecuting attorney made impermissible comments about his character in the presence of the jury, and that he was deprived at trial of the effective assistance of counsel. We find no merit in these contentions and affirm his convictions.

1. We consider first whether the evidence is sufficient to sustain Howard's convictions. To this end, we ask whether any rational jury could find proof of his guilt beyond a reasonable doubt in the evidence adduced at trial, viewing that evidence in the light most favorable to the verdict. *Ferguson v. State*, 307 Ga. App. 232, 233 (1) (704 SE2d 470) (2010). And when we consider this question, we must keep in mind that it is for the jury, not this Court, to resolve conflicts in the evidence, weigh the evidence, and draw reasonable inferences from the evidence. Id. So, if the record contains some competent evidence to prove each element of the crimes of which the defendant was convicted, even if that evidence is controverted, we must uphold the conviction. Id.

Viewed in the light most favorable to the verdict, the evidence

---

[1] See OCGA § 16-5-40 (a).
[2] See OCGA § 16-11-106 (b).

shows that, on May 7, 2007, the driver of a Pepsi-Cola delivery truck made a delivery to a Wal-Mart in Valdosta, where the driver stocked several vending machines and collected money from the machines, which he then put into a safe in his delivery truck. As the driver was leaving the Wal-Mart, a man jumped into the cab of the truck, pointed a handgun at the driver, and chambered a round. The gunman asked if the driver knew what he wanted, to which the driver responded that he did, and the gunman replied: "Don't do nothing stupid, and there won't be no trouble." The gunman then told the driver to drive away, occasionally instructing the driver to turn onto a crossroad and eventually directing the driver to a secluded dirt road, more than six miles from the Wal-Mart. As they drove, the driver told the gunman that the driver did not know the combination to open the safe, and the gunman said that other people were following the truck and that they would be displeased if he could not get any money from the driver. The gunman finally asked the driver if he had anything else of value in the truck, and the driver offered to give the gunman credit cards and Pepsi products. The gunman declined this offer, but when the truck stopped on the dirt road, the gunman took a cell phone from the driver, exited the truck, and disappeared.

After the driver notified law enforcement of the robbery, officers spoke with a witness who said that he had seen a Pepsi-Cola delivery truck driving down the dirt road — an unusual sight, according to this witness — followed closely by a purple PT Cruiser. An investigator with the Lowndes County Sheriff's Office then reviewed video recordings from surveillance cameras at the Wal-Mart,[3] and these video recordings show that someone drove a PT Cruiser into the Wal-Mart parking lot around three o'clock on the afternoon of the robbery and parked there for nearly two hours, moving several times to different parking spaces, all within sight of the Pepsi-Cola delivery truck, which then was parked in the front of the store. The recordings depict a passenger exiting the PT Cruiser, entering the Wal-Mart, and then returning later to the PT Cruiser. The recordings also show that, around five o'clock, the passenger again exited the PT Cruiser and began to walk toward the intersection at which, according to the delivery truck driver, a man jumped into the truck. And the recordings show that, only moments later, the driver of the PT Cruiser pulled directly in front of the delivery truck as it was leaving the Wal-Mart.

The investigator obtained a photograph of the passenger as he entered the Wal-Mart on the afternoon of the robbery, and the

---

[3] These video recordings were admitted at trial and shown to the jury.

investigator took this photograph to the Pepsi-Cola facility at which the driver worked.[4] Someone at the facility identified the passenger as Howard, a former Pepsi-Cola employee. The investigator then contacted Howard and arranged to interview him. Howard admitted that he had been at the Wal-Mart on May 7, but he said at first that he had gone there to meet his girlfriend. When the investigator began to probe the details of his story, Howard volunteered that he had hitched a ride with the Pepsi-Cola delivery driver, and Howard claimed that the driver had driven him home. Howard was arrested, and by monitoring telephone calls that Howard made from the jail, the investigator was able to identify the person who drove the PT Cruiser, who also was arrested. The driver of the PT Cruiser subsequently gave several statements to police, admitting in one, among other things, that he drove to a dirt road on the afternoon of May 7 and there picked up Howard.

Howard testified at his trial and told the jury that he and the driver had hatched a plan to steal soft drinks from Pepsi-Cola and sell them on the side to retailers. According to Howard, they never followed through on their plan, but when Howard saw the driver at the Wal-Mart on May 7, he flagged down the driver to ask if the driver still wanted to "hustle" soft drinks from his truck. The driver agreed, Howard said, and they drove to a convenience store to try to sell the soft drinks in the truck. At some point, however, Howard claims that he changed his mind and that the driver stopped and let him out of the truck on a dirt road.

Howard does not dispute that the evidence adduced at trial is sufficient to show that he entered the delivery truck on May 7, pointed a gun at the driver, and attempted to rob the driver, but it is insufficient, Howard says, to prove that he kidnapped the driver.[5] Under Georgia law, "[a] person commits the offense of kidnapping when such person abducts or steals away another person without lawful authority or warrant and holds such person against his or her will." OCGA § 16-5-40 (a). Howard contends that the evidence adduced at his trial does not prove beyond a reasonable doubt that he abducted or stole away the driver. We disagree.

For guidance on this issue, we look to *Garza v. State*, 284 Ga. 696 (670 SE2d 73) (2008), in which our Supreme Court identified four

---

[4] Considering that the robber appeared to have known that a safe was inside the delivery truck, the investigator suspected that the robber might be someone known to Pepsi-Cola employees.

[5] Howard argues that, because the evidence is insufficient to prove kidnapping, it necessarily is insufficient to prove that he had possession of a firearm during the commission of the crime of kidnapping. His claim of insufficient evidence as to the firearm charge, therefore, is derivative of his claim of insufficient evidence as to the kidnapping charge. Howard offers no independent reason why the evidence cannot sustain the firearm conviction.

factors to be considered in assessing whether a specific movement amounts to abduction or stealing away:

> (1) the duration of the movement; (2) whether the movement occurred during the commission of a separate offense; (3) whether such movement was an inherent part of that separate offense; and (4) whether the movement itself presented a significant danger to the victim independent of the danger posed by the separate offense.

284 Ga. at 702 (1). The Supreme Court also explained that the terms "abduction" and "stealing away" both "connote a literal taking from one place to another."[6] Id. at 700 (1) n. 3. According to *Garza*, the ultimate test of whether movement amounts to abduction or stealing away is whether the movement "is in the nature of the evil the kidnapping statute was originally intended to address . . . movement serving to substantially isolate the victim from protection or rescue." Id. at 702 (1).

Considering these factors leads us inevitably to the conclusion that the evidence is sufficient to sustain the kidnapping conviction in this case. The driver was forced at gunpoint to drive more than six miles, a substantial distance. The movement from a Wal-Mart parking lot to a secluded dirt road isolated the driver and made it less likely that law enforcement officers or bystanders would discover his predicament and come to his aid. And the movement made it less likely that Howard would be seen by eyewitnesses, which gave him greater freedom to do as he wished with the driver. In short, the evidence is overwhelming that the movement in this case served "to substantially isolate the victim from protection or rescue," and for this reason, the evidence of abduction or stealing away is more than sufficient to sustain the kidnapping conviction.[7]

2. We consider next the contention that, while cross-examining

---

[6] After the Supreme Court decided *Garza*, the General Assembly amended OCGA § 16-5-40 and added, among other things, a provision that "[f]or the offense of kidnapping to occur, slight movement shall be sufficient; provided, however, that any such slight movement of another person which occurs while in the commission of another offense shall not constitute the offense of kidnapping if such movement is merely incidental to such other offense." Ga. L. 2009, p. 331, § 1. This amendment applies, however, only to crimes committed on or after July 1, 2009.

[7] Howard also says that the evidence is insufficient to sustain his kidnapping conviction because he presented evidence — in the form of his own, self-serving testimony — that he entered the delivery truck with the consent of the driver. The jury, however, was authorized to reject this testimony, see *Ferguson*, 307 Ga. App. at 235 (1), and this testimony supplies no basis for a finding that the evidence is insufficient to sustain the convictions. And in any event, even if Howard entered the cab of the truck with the consent of the driver, the jury still was authorized to find that Howard pulled a gun after entering the cab and forced the driver at gunpoint to drive several miles.

Howard, the prosecuting attorney improperly commented on his character. Specifically, Howard complains about this line of cross-examination:

> Q. And you left Pepsi-Cola Company; your last work day was October 9, 2006, wasn't it?
> A. I can't recall. I know it was in October.
> Q. October 9th?
> A. I can't recall.
> Q. Termination date October 12, 2006; is that correct?
> A. Excuse me?
> Q. Your last day you went to work was October 9th, and your termination date was October 12, 2006, wasn't it?
> A. It was in October.

Howard says that the references to "termination date" imply that he was fired from his job at Pepsi-Cola for misconduct and, therefore, implicate his character. We disagree.

The word "termination," used with reference to employment, means simply the "end" or "conclusion" of employment. See Webster's New International Dictionary at 2605 (2nd ed. 1959). Whether an employee is fired for misconduct, is laid off as part of a reduction in force, or voluntarily resigns, his employment is "terminated," so the use of the word in the context in which it was used in this case does not clearly implicate the character of the terminated employee. In that sense, this case is like *Richardson v. State*, 173 Ga. App. 695, 696 (2) (327 SE2d 813) (1985), in which we held that a reference to the defendant having "been in some trouble" did not put his character at issue because it was unclear what was meant by "trouble." The prosecuting attorney did not improperly comment on Howard's character.

3. Last, we consider whether Howard was deprived at trial of the effective assistance of counsel. To prevail on his claim of ineffective assistance, Howard must prove both that the performance of his lawyer at trial was deficient and that he was prejudiced by this deficient performance. *Strickland v. Washington*, 466 U. S. 668, 687 (III) (104 SC 2052, 80 LE2d 674) (1984). To prove that the performance of his lawyer was deficient, Howard must show that his lawyer performed his duties at trial in an objectively unreasonable way, considering all the circumstances and in the light of prevailing professional norms. See id. at 687-688; see also *Kimmelman v. Morrison*, 477 U. S. 365, 381 (II) (C) (106 SC 2574, 91 LE2d 305) (1986). And to prove that he was prejudiced by the performance of his lawyer, Howard must show "a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U. S. at 694 (III) (B); see also *Williams v. Taylor*, 529 U. S. 362, 391 (III) (120 SC 1495, 146 LE2d 389) (2000). This burden, although not impossible to carry, is a heavy one. See *Kimmelman*, 477 U. S. at 382 (II) (C). Howard contends that the performance of his lawyer at trial was deficient in several respects. We will examine each of these contentions in turn.

(a) First, Howard contends that his lawyer was ineffective because he called no character witnesses at the trial. At the hearing on his motion for new trial, Howard called four witnesses, all of whom said that they would have been willing to vouch for his character at his trial. Howard himself, however, admitted that he did not even mention two of these witnesses to his lawyer before the trial, and his lawyer certainly was not ineffective for failing to call these two witnesses. See *Adkins v. State*, 280 Ga. 761, 762 (2) (a) (632 SE2d 650) (2006) (lawyer not ineffective for failing to identify witnesses whose existence never was brought to his attention). A third witness, who had employed Howard, had no knowledge of his reputation in the community and only knew that Howard was one of his best pool installers. The lawyer was not ineffective for failing to call this witness because his testimony was not properly admissible as evidence of good character in any event. See *Thomas v. State*, 282 Ga. 894, 895-896 (2) (a) (655 SE2d 599) (2008) (lawyer not ineffective for failing to call former employers, who only knew of defendant "based on his work and the limited interactions they had with him," as character witnesses because good character evidence must be based on knowledge of general reputation in the community).

The fourth witness is Howard's mother, and we accept that the lawyer knew of her existence before trial and that her testimony would have been admissible. Nevertheless, as a general principle, "decisions concerning whether to call character witnesses and whether to place the defendant's character in issue are matters of strategy or tactics." *Gresham v. State*, 295 Ga. App. 449, 451 (3) (671 SE2d 917) (2009) (punctuation and footnote omitted). Such matters of strategy do not amount to ineffective assistance unless the strategy is so unreasonable that "no competent attorney would have [chosen it] under similar circumstances." *Collins v. State*, 300 Ga. App. 657, 659 (1) (686 SE2d 305) (2009) (citation omitted). The lawyer in this case explained that he did not call any character witnesses because he was concerned that it would open the door to harmful cross-examination and evidence of Howard's bad character. Howard had a prior felony conviction, had several prior misdemeanor convictions for giving false information to police officers, and

may have stolen money and credit cards while employed with Pepsi-Cola. As it turns out, none of these things came into evidence at trial.[8] It was not unreasonable for Howard's lawyer to worry that they might come in if he called good character witnesses, and the lawyer was not ineffective, therefore, for failing to call Howard's mother at trial.[9] See *Kay v. State*, 306 Ga. App. 666, 671 (5) (a) (703 SE2d 108) (2010) (lawyer not ineffective for deciding to call no character witnesses to avoid "opening the door to evidence of bad character").

(b) Second, Howard contends that his lawyer effectively forced him to testify at trial and, to compound this error, failed to adequately prepare him to testify. But the evidence does not show that the lawyer forced Howard to testify. The lawyer explained that, during the trial, Howard concocted a new theory of defense, namely that he and the driver had planned to steal soft drinks from Pepsi-Cola and sell them on the side. The lawyer had planned to put up a different defense, and he tried to warn Howard about the risks involved in presenting his newly concocted defense, which necessarily would involve Howard admitting to a conspiracy to steal from Pepsi-Cola. Nevertheless, the lawyer advised Howard that, if he insisted upon this new theory of defense, he would have to testify because no other witness could testify about a conspiracy with the driver. This advice was neither erroneous nor improper. Moreover, Howard himself admitted that he "wasn't given an ultimatum" and that he decided freely and voluntarily to testify.

As to the manner in which the lawyer prepared Howard to testify, the lawyer explained that his office met with Howard on five occasions, that he obtained discovery and gave copies of it to Howard,

---

[8] On appeal, Howard points out that, because he testified, the State could have impeached him with the prior convictions anyway, see OCGA § 24-9-84.1 (a) (2)-(3), so, Howard says, a concern about those convictions was no reason to turn away good character witnesses. But it is not certain that all the prior convictions would have been admitted for impeachment purposes, see OCGA § 24-9-84.1 (a) (2) (felony conviction admissible if "probative value of admitting the evidence substantially outweighs its prejudicial effect to the defendant"), and the prior convictions were not the only bad character evidence about which the lawyer might reasonably have been concerned. The lawyer might also reasonably have worried that, even if the prior convictions had been admitted as impeachment evidence during Howard's testimony, having character witnesses cross-examined about the same prior convictions would only have called more attention to Howard's bad character. Finally, we reiterate that, even if the prior convictions might have been admissible as impeachment, they were not admitted for that purpose.

[9] Even if it was unreasonable for the trial lawyer to fail to call Howard's mother as a character witness, Howard had a history of dishonesty, as the trial court accurately observed, and we too are unconvinced that the testimony of Howard's own mother would have made any difference at trial. See *Gresham*, 295 Ga. App. at 451-452 (3) (trial court "authorized to conclude that introduction of the character evidence [from a biased witness] would not have made a difference at trial").

and that he explained to Howard the "basics" of "how to testify." The lawyer said that he did not do more because he did not want it to appear that Howard had been "coached" in his testimony. A concern that a defendant — especially one with a history of dishonesty — might appear to have been coached in his testimony is not an unreasonable one. Howard has failed to carry his burden to prove that his lawyer was ineffective with respect to the advice he gave Howard about testifying and the manner in which he prepared Howard to testify.[10]

(c) Howard also contends that his lawyer was ineffective because he did not ask for a jury charge on false imprisonment[11] or hijacking a motor vehicle[12] as lesser included offenses. Even if we were to assume that the lawyer ought to have asked for these charges, to show prejudice, Howard would be required to prove that, "had the charge been requested, authorized, and given, there is a *reasonable probability* it would have changed the outcome of the trial." *Springs v. Seese*, 274 Ga. 659, 661 (3) (558 SE2d 710) (2002) (emphasis in original). The only difference between kidnapping and false imprisonment is the element of abducting or stealing away, see *Williams v. State*, 237 Ga. App. 555, 555 (515 SE2d 862) (1999), and as we found in Division 1, the evidence of abducting or stealing away in this case is overwhelming. And hijacking a motor vehicle carries precisely the same penalties as kidnapping a person who is 14 years of age or older, so we do not understand how it would be of any benefit to Howard to have been convicted of hijacking, rather than kidnapping. Compare OCGA § 16-5-44.1 (c) (hijacking a motor vehicle is punishable by "imprisonment for not less than ten nor more than 20 years") with OCGA § 16-5-40 (d) (1) (kidnapping a person who is 14 years of age or older is punishable by "[i]mprisonment for not less than ten nor more than 20 years"). Consequently, we see no reasonable probability that these jury charges, even if given, would have produced a materially different outcome for Howard.

(d) Last, Howard contends in general terms that his lawyer failed to adequately consult with him before trial about the potential consequences of a trial and the potential penalties that he faced. But the lawyer testified otherwise at the hearing, explaining that he talked with Howard about discovery, plea offers, theories of defense, whether Howard should testify, and the possible penalties that

---

[10] As to the manner in which the lawyer prepared Howard to testify, we also note that Howard has not shown "how further preparation would have changed [his] testimony such that it would have affected the outcome of the case." *Thomas*, 285 Ga. App. at 293-294 (2). Consequently, Howard cannot show prejudice.

[11] See OCGA § 16-5-41 (a).

[12] See OCGA § 16-5-44.1 (b).

Howard would face if convicted. The trial court was authorized to credit the testimony of the lawyer about these things and reject the claim of ineffective assistance. See *Thomas v. State*, 285 Ga. App. 290, 293 (2) (645 SE2d 713) (2007).

*Judgment affirmed. Barnes, P. J., and Adams, J., concur.*

DECIDED JULY 7, 2011.

*John G. Edwards*, for appellant.
*J. David Miller, District Attorney, Bradfield M. Shealy, Assistant District Attorney*, for appellee.