## A05A0825. WHITAKER v. THE STATE.
### (622 SE2d 916)

PHIPPS, Judge.

Following his trial on four counts of burglary, Timothy Whitaker was found guilty of committing two counts.[1] The trial court denied his motion for new trial and Whitaker appeals, contending he is entitled to a new trial as a result of ineffective assistance of counsel and the following alleged errors committed by the trial court: (1) dismissal of a juror sua sponte; (2) denial of his motion for mistrial or severance; and (3) questioning of witnesses in a manner that demonstrated bias. Because we find Whitaker received ineffective assistance of counsel, we reverse and remand this case for a new trial.

1. Whitaker contends he received ineffective assistance because his counsel introduced into evidence certified copies of previous convictions for two of the state's star witnesses that also showed that Whitaker had been charged with the same crimes: possession of tools for the commission of a crime, criminal trespass, and burglary.

> The two-prong test for determining the validity of a claim of ineffective assistance of counsel provided in *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984) asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable probability that the outcome of the proceedings would have been different, but for counsel's deficiency.[2]

In this case, counsel introduced into evidence an unredacted defense exhibit showing that Whitaker had previously been charged with an identical crime and two closely related crimes. Although trial counsel testified at the motion for new trial hearing that she introduced the exhibits as part of her trial strategy to impeach the state's witnesses, she did not offer any explanation for failing to redact the exhibits, which she knew implicated her client in other crimes. In *Emilio v. State*,[3] we found that defense counsel's failure to redact bad character evidence from a defense exhibit was deficient performance and rejected the argument that it had been introduced as part of a

---

[1] The trial court directed a verdict on one count and the jury found Whitaker not guilty of the remaining count.

[2] *Bruce v. State*, 252 Ga. App. 494, 498 (2) (555 SE2d 819) (2001) (citation and punctuation omitted).

[3] 263 Ga. App. 604, 605 (1) (588 SE2d 797) (2003) (defense counsel introduced letter for impeachment that also stated defendant "was wanted in five states and implied that the Georgia Bureau of Investigation was investigating the case").

trial strategy to impeach a witness. Thus, as in *Emilio*, "we hold here that trial counsel's actions constituted deficient performance and that the trial court clearly erred in holding otherwise."[4]

Having found deficient performance by trial counsel, we must now analyze whether there is a reasonable probability that the outcome of the proceedings would have been different. In order to do so, we must review the state's evidence against Whitaker, which rested primarily on the word of two alleged accomplices, Zachary McArthur and Whitaker's brother, Ronald Whitaker.

The record shows that the two burglaries for which the jury convicted Whitaker involved a residence and an Absolute Audio store. The evidence shows that the Absolute Audio burglar entered by cutting holes in the roof and took stereo equipment worth $2,700 from an interior storeroom that was not protected by the security alarm.

An Absolute Audio employee testified that the door to this storeroom was kept closed during the day. Less than a week before the burglary, however, a customer asked to see additional stock and the employee showed him the storeroom. The employee testified that he believed the customer could have been either Ronald Whitaker or Buddy Harrell,[5] but he was not certain. The customer was driving a white work van. The employee further testified that he believed the perpetrators used a truck and a trailer to remove the stolen merchandise because there were two sets of tire tracks leading to the back of the Absolute Audio building.

Rosa Brown testified that her home was broken into and the following items were taken: a Bose stereo system; jewelry, guns, a CD collection, tools, a guitar, and computer programs. Police recovered the Bose stereo system and returned it to Brown.

David Usher, the White County police detective who investigated the Absolute Audio burglary, testified that he was unable to lift any fingerprints from the scene. Later, he received word that McArthur, who was being held in Hall County on unrelated charges, wanted to talk with him about some burglaries in White County. McArthur told Usher that Timothy Whitaker, Ronald Whitaker, and Harrell were involved in the burglaries. After Usher issued a BOLO ("be on the lookout") for the Whitakers and Harrell, Ronald Whitaker was stopped while driving his white work van and arrested for traffic offenses and possession of methamphetamine. Usher interviewed Ronald Whitaker while he was in custody and Ronald Whitaker told him that Timothy Whitaker, McArthur, and Harrell committed the burglaries.

---

[4] Id. (citation omitted). See also *Vann v. State*, 266 Ga. App. 238, 240-241 (1) (596 SE2d 722) (2004) (trial counsel's performance deficient for failing to move to bifurcate trial of possession of a firearm by a convicted felon).

[5] Harrell was Timothy Whitaker's co-defendant at trial.

After receiving Ronald Whitaker's permission to search his van, Usher recovered stereo equipment and a roll of window tint that had been taken from Absolute Audio. Ronald Whitaker also turned over to police the Bose stereo that had been taken from the Brown residence. Usher acknowledged that he never searched the homes of Timothy Whitaker or Harrell and that the only property recovered from the burglaries came from Ronald Whitaker.

McArthur testified that he had been good friends with Whitaker for around eight years and that Whitaker told him that he broke into Absolute Audio through the roof and took stereos, speakers, and amps. McArthur testified that he saw this equipment at Whitaker's house and that Whitaker had installed some of it in an older model car that did not run. McArthur admitted that he had initially been charged with the same four burglaries as Whitaker and that the charges against him had been dropped. He also admitted that he did not contact Usher to report that Whitaker had committed the burglaries until after his own arrest in Hall County.

Ronald Whitaker testified that Harrell told him that he took the stereo equipment from Absolute Audio after he entered the store through the roof. Ronald Whitaker further testified that he saw his brother unloading the equipment from a Honda Accord into Harrell's house; a trailer was not hitched to it. The amount of equipment taken filled the kitchen. He admitted that he installed in his white work van stereo equipment stolen from Absolute Audio by Harrell and that one of his favorite work ladders was found at Absolute Audio after the burglary. He denied that Harrell had access to his work van the night of the break-in because he was driving it. He also claimed that there had been room in the Honda for Harrell to load an entire kitchen full of stereo equipment taken from Absolute Audio. With regard to the burglary of the Brown residence, Ronald Whitaker testified that Harrell told him he broke into the house and Ronald Whitaker saw various stolen items from that burglary in Harrell's house, including guns and a Bose stereo. He admitted that he knew that the Bose stereo, which he "ended up with" and later turned over to the police, had been stolen.

Ronald Whitaker also acknowledged that he was initially charged with the Absolute Audio burglary and theft by receiving stolen property and that these charges were dropped. Ronald Whitaker also claimed that his brother never told him that he had participated in the Absolute Audio burglary. In his first statement to police about the Absolute Audio burglary, Ronald Whitaker did not include his brother as a participant. In a second statement to police, he told them that his brother was involved. He testified at trial that he did this because he was "dosed up on dope," and admitted having said in his second statement, "I'll do anything that I've got to do to get my charges

reduced or whatever to get myself out of this trouble." He also admitted having said in his statement to police that his wife was more important than his brother. Finally, he admitted that he had one prior forgery conviction, two prior burglary convictions, and a drug possession conviction.

Based on the evidence against Timothy Whitaker, as well as the prejudice caused by the unredacted defense exhibit, we find that there is a reasonable probability that the outcome of Whitaker's trial would have been different but for counsel's deficiency. The only direct evidence against Whitaker was the word of two individuals with previous criminal convictions who had a motive to point the finger at Whitaker, particularly since they also faced criminal charges for the same events. No stolen items were recovered from Whitaker's home or car and no physical evidence linked him to the crimes. Finally, evidence that these four individuals had previously been charged with committing similar crimes together may have caused the jury to give additional credence to the testimony of the state's star witnesses. "The evidence to support [Whitaker's] conviction is not overwhelming, and under these circumstances, we must conclude that there is a *reasonable probability* that the outcome would have been different had it not been for trial counsel's deficient performance."[6]

2. In light of our holding in Division 1, we need not address Whitaker's remaining claims of error.

*Judgment reversed and case remanded. Andrews, P. J., and Mikell, J., concur.*

DECIDED NOVEMBER 4, 2005.

*Martin W. Welch*, for appellant.
*N. Stanley Gunter, District Attorney, Kerry I. Banister, Assistant District Attorney*, for appellee.

---

[6] *Emilio*, supra, 263 Ga. App. at 606 (1) (emphasis in original).