**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BLACKWELL, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

June 25, 2012

# In the Court of Appeals of Georgia

A11A1876. COPENY v. THE STATE.
A12A0283. WARE v. THE STATE.

BLACKWELL, Judge.

James Kennedy Copeny, Jr., Jaryn Ware, and Kenneth George Hinton were tried together and each convicted of armed robbery,[1] hijacking a motor vehicle,[2] and two counts of possession of a firearm during the commission of a crime.[3] Copeny and Ware appeal,[4] each contending that the evidence adduced at trial is insufficient to sustain his conviction. In addition, Copeny asserts that the court below improperly

---

[1] OCGA § 16-8-41(a).

[2] OCGA § 16-5-44.1

[3] OCGA § 16-11-106.

[4] Copeny appeals in Case No. A11A1876, and Ware appeals in Case No. A12A0283. We decide both appeals with this opinion.

commented upon the evidence when it charged the jury, and Ware contends that the court should have merged his convictions for armed robbery and hijacking a motor vehicle. We find no merit in these contentions, and we affirm the judgments of conviction.

1. We turn first to the sufficiency of the evidence. When we consider whether the evidence is sufficient to sustain a conviction, we ask whether any rational jury could have found proof beyond a reasonable doubt of the guilt of the defendant in the evidence adduced at trial, viewing that evidence in the light most favorable to the verdict. *Ferguson v. State*, 307 Ga. App. 232, 233 (1) (704 SE2d 470) (2010). And as we consider this question, we must keep in mind that it is for the jury, not appellate judges, to weigh the evidence, pass upon the credibility of witnesses, and resolve conflicts in the evidence. See id. So, if the record contains some competent evidence sufficient to prove beyond a reasonable doubt each element of the crime of which the defendant was convicted, we must uphold the conviction, even if the evidence is contradicted. Id.

Viewed in the light most favorable to the verdict, the evidence in this case shows that the victim met Tinisha Henry when, while driving down a street in Riverdale, the victim saw her walking along the road, stopped to talk with her, and

gave his telephone number to her. One evening, Henry called the victim and asked him to meet at a house after he finished work, ostensibly to have a drink. A few hours later, the victim drove to the place to which Henry had directed him, and when he arrived, he saw Henry standing in the street. After he parked and exited his car, the victim was approached by four men. The men were armed, their faces were concealed, and they informed the victim of their intent to rob him. At trial, the victim testified that one of these men was taller than the others, and the tall one wore a white shirt, while the others wore dark clothing. One of the men took cash and a cell phone from the victim, and Henry took the keys to his car. Henry then drove away in the victim's car, a Monte Carlo, and the four men drove away in a Lincoln Town Car.

The victim promptly contacted law enforcement, and officers were instructed to be on the lookout for both the Monte Carlo and the Town Car. Officers soon located the Monte Carlo and apprehended Henry. Later, officers also located a Town Car and stopped it. Inside the Town Car, the officers found Copeny, Ware, Hinton, and a fourth man, Malcolm Arnold. The victim was taken to the scene of the stop, and he confirmed that the Town Car that officers had stopped was, in fact, the Town Car in which his assailants had driven away. The victim also viewed the occupants of the Town Car. He was unable to definitively identify any of the occupants as one of his

3

assailants, inasmuch as they had covered their faces during the robbery, but the victim told officers that the height, weight, and attire of the occupants of the Town Car was consistent with that of his assailants. An officer testified at trial that, when the Town Car was stopped, Hinton was wearing a white shirt and was taller than the other occupants, including Copeny and Ware. The officers frisked Arnold, and they found a handgun and the cell phone of the victim on his person. The officers also searched the Town Car, where they found a handgun wrapped in a black face mask, a black hat, black shorts, a black shirt, a black glove, and two hooded sweatshirts.

Officers arrested the men and interviewed Copeny and Ware. In his interview, Copeny said that he had been riding in the Town Car with several others, including Henry and someone known as "Donnio." Copeny admitted that, when he got into the Town Car, he knew that there were guns in the car. Copeny also admitted that he rode in the Town Car to a vacant house, where, he said, he sat in the car and smoked cigarettes until someone told him to go around to the back of the house. He did so, he said, and from the back of the house, he heard someone say, "Just take it, take what you want." According to Copeny, he then walked back to the front of the house, saw a man holding up his hands, and observed Henry get into that man's car and drive it away. By his account, Copeny then returned to the Town Car, in which he rode away.

4

In a separate interview, Ware admitted that Donnio told him of a plan that involved a woman calling a man and leading the man to believe that she was romantically interested in the man. Then, Donnio told Ware, "they were going to take [the man's] car."[5] Ware said that he later traveled with Henry and the others in the Town Car to a vacant house, where Ware went to the rear of the house, while Henry waited in the front. A man arrived, and Ware walked to the front of the house, he admitted, and took money from the pockets of the man. Ware also admitted that he saw two guns during the incident.

(a) As to Copeny, the evidence is sufficient to prove beyond a reasonable doubt that he was a party to the crimes charged. "[A] person who does not directly commit a crime may be convicted upon proof that a crime was committed and that person was a party to it." *Walsh v. State*, 269 Ga. 427, 429 (1) (499 SE2d 332) (1998) (citation omitted). Moreover, "whether a person was a party to a crime can be inferred from his presence, companionship, and conduct before and after the crime was committed."

---

[5] Henry testified at trial and confirmed the role that Donnio, whom she knew as "Dee," played in the robbery. Henry said that she asked Donnio for his help to steal a car, and he agreed. On the evening of the robbery, she went in the Town Car to a vacant house with Donnio and four other men. According to Henry, Donnio instructed her to call the victim, which she did, and she asked the victim to come see her. When the victim arrived at the vacant house, he was robbed with guns.

Id. (citation omitted). And as we have explained before, "[i]f the defendant had knowledge of the intended crime *and* shared in the criminal intent of the principal actor, he is an aider and abettor." *McWhorter v. State*, 198 Ga. App. 493 (1) (402 SE2d 60) (1991) (citation and punctuation omitted; emphasis in original). See OCGA § 16-2-20 (b) (a person is concerned in the commission of a crime only if, among other things, he directly commits the crime or "[i]ntentionally aids or abets in the commission of the crime").

Here, the jury readily could conclude that Copeny had knowledge of the crime and shared in the criminal intent of the perpetrators. Copeny accompanied Henry and Donnio to a vacant house after Donnio agreed to help Henry steal a car. The men waited with Henry at the house until, after the victim was contacted, they hid from view. According to Henry, when the victim pulled up, Donnio was positioned behind her so that, when the victim got out of the car, the only person he saw was Henry. The victim testified that four gunmen then appeared "out of nowhere." Further, Copeny knew guns were in the Town Car before the robbery, he followed instructions to move behind the house before the victim arrived, and he left with the others after the robbery was completed. Whether Copeny was one of the four masked assailants described by the victim or whether, as Copeny claimed, he emerged from behind the

6

house only just before Henry took the victim's car, any rational jury could conclude that Copeny was not simply an innocent bystander, but one who aided and abetted Henry and the others in effecting the plan to steal the victim's car. See *Williams v. State*, 236 Ga. App. 790, 792 (513 SE2d 757) (1999) (evidence sufficient to show defendant was a party to hijacking where defendant made no effort to distance himself from his cohorts as vehicle was being stolen, never offered the victim any help, and drove the stolen vehicle during the month following the hijacking); *Lewis v. State*, 199 Ga. App. 97, 98 (1) (403 SE2d 814) (1991) (where defendant arrived at crime scene with co-defendant, and did nothing to assist the victim or deter the co-defendant while the co-defendant strangled and robbed the victim, evidence was sufficient to find defendant guilty beyond a reasonable doubt of armed robbery); *Lunz v. State*, 174 Ga. App. 893, 895 (1) (332 SE2d 37) (1985) (where evidence showed the two co-defendants arrived at the crime scene with the gunman, the three were present at the robbery and shooting, and the two co-defendants left but rejoined the gunman afterwards, when he disposed of the gun, evidence was sufficient to show co-defendants were parties to crimes of armed robbery and aggravated assault).

(b) The evidence also is sufficient to sustain Ware's convictions. Ware admitted that he took money from the victim's pocket, but he argues that he never

7

admitted to advance knowledge of an armed robbery or a hijacking. Therefore, he contends, Henry's testimony was the only evidence that he was a party to crimes involving the taking of the victim's car by use of a handgun, and because Henry was an accomplice, her testimony alone is insufficient. See generally *In the Interest of D. J.*, 253 Ga. App. 265, 266 (558 SE2d 806) (2002) ("[t]he testimony of an accomplice cannot, by itself, establish the guilt of the accused in a felony case") (footnote omitted). But even slight evidence from an extraneous source is sufficient corroboration to support accomplice testimony, and that evidence may be circumstantial so long as it tends to connect the accused to the crime. See *Richardson v. State*, 305 Ga. App. 850, 852 (700 SE2d 738) (2010). In this case, the circumstances of the robbery were established by various sources, including the victim, who testified that a gunman took money and a cell phone from his pockets. A rational jury could conclude that Ware knowingly participated in the crimes against the victim and that he was guilty beyond a reasonable doubt of the crimes of which he was convicted. See *Norris v. State*, 220 Ga. App. 87, 89 (2) (469 SE2d 214) (1996) (where the defendant arrived at the scene with the co-defendants, entered the victim's house and robbed the victim after he was shot by a co-defendant, and he then left the

scene with his co-defendants, the evidence was sufficient to show he was a party to the armed robbery and aggravated assault).

2. Copeny also contends that the trial court improperly commented on the evidence while instructing the jury. During deliberations, the jury sent two notes contemporaneously to the trial court. In the first, the jury asked: "Where is Donn[i]o? Was he indicted?" The second note stated: "Ask the judge the guideline for co[-]conspiracy." The trial court responded to the first note by informing the jury that "those are facts. I cannot go into the facts. The facts are closed." The judge added, "That's immaterial to your consideration of the case anyway, as it would be explained by the re-charge that you have asked for." The trial court then recharged the jury on party to a crime. Copeny joined in Ware's objection that the trial court commented on the evidence by informing the jury that it was "immaterial that [Donnio] wasn't here."

On appeal, Copeny contends that the trial court violated OCGA § 17-8-57, which provides that "[i]t is error for any judge in any criminal case . . . to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." But, "[t]he statute is only violated when the court's charge assumes certain things as facts and intimates to the jury what the judge believes the evidence to be."

9

*Jones v. State*, 268 Ga. 12, 15 (5) (483 SE2d 871) (1997) (citation and punctuation omitted). Here, the trial judge made it clear to the jury that he would not address the facts of the case. The trial judge's comment "that's immaterial" was made, as he said, in contemplation of giving "the re-charge that you have asked for." In the ensuing instruction, the trial court informed the jury that a party to the crime may be tried, convicted, and punished, "even though the person alleged to have directly committed the crime has not been prosecuted . . . ." Accordingly, and in context, the record does not show that the trial court expressed any opinion as to what had been proven at trial, and the court did not breach the limitations of OCGA § 17-8-57. See *Buffington v. State*, 171 Ga. App. 919, 923 (8) (321 SE2d 418) (1984) (charge considered as a whole in considering whether trial court improperly expressed an opinion as to the facts). No new trial is required.

3. Ware contends that the trial court erred in denying his motion to merge the offense of armed robbery into the offense of hijacking a motor vehicle for purposes of sentencing. But as Ware acknowledged below, the hijacking statute itself precludes a merger of these offenses. "The offense of hijacking a motor vehicle shall be considered a separate offense and shall not merge with any other offense; and the punishment prescribed by subsection (c) of this Code section shall not be deferred,

10

suspended, or probated." OCGA § 16-5-44.1 (d). Although Ware apparently questions the wisdom of the legislative choice to punish his crimes in this way, we have found previously "that OCGA § 16-5-44.1 (d) supersedes the double jeopardy provision contained in OCGA § 16-1-7 (a)." *Boykin v. State*, 264 Ga. App. 836, 842 (6) (592 SE2d 426) (2003). See also *Mathis v. State*, 273 Ga. 508, 509 (1) (543 SE2d 712) (2001) ("OCGA § 16-5-44.1 (d) expresses the clear legislative intent to impose double punishment for conduct which violates both OCGA § 16-5-44.1 (b) and other criminal statutes"). Accordingly, Ware's claim is without merit.

*Judgments affirmed. Mikell, P. J., and Miller, J., concur.*