**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**November 27, 2012**

# In the Court of Appeals of Georgia

A12A1455. BERRY v. THE STATE.

RAY, Judge.

After a jury trial, Terrence Berry was convicted of one count each of trafficking in cocaine, possession of cocaine with intent to distribute, possession of cocaine, possession of marijuana with intent to distribute, felony possession of marijuana, and possession of a firearm during the commission of a crime. In this out-of-time appeal from his convictions, Berry argues that the trial court erred when it denied his motion to suppress, that he received ineffective assistance of counsel, and that the evidence was insufficient to support his convictions. Finding no error, we affirm.

1. Berry contends that the trial court erred in denying his motion to suppress, arguing that the evidence supporting his conviction was obtained as a result of an unlawful search of Berry's truck. We disagree.

When reviewing the denial of a motion to suppress, three rules apply:

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by the reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. Because there was testimonial evidence in this case, we do not apply a de novo standard of review.[1]

The evidence adduced at the motion to suppress hearing and at trial[2] shows that while he was monitoring traffic at Jackson Road in Spalding County, Officer Gene Mathews received information that a red 2004 Chevrolet Silverado suspected of transporting a large quantity of drugs would be driving past him. He was instructed to pull the truck over if he found probable cause to do so. Upon noticing the Silverado, driven by Berry, Sergeant Mathews noted that the windows were illegally

---

[1] (Footnote and emphasis omitted.) *Ware v. State*, 309 Ga. App. 426 (710 SE2d 627) (2011).

[2] In reviewing a trial court's decision on a motion to suppress, we consider all relevant evidence of record, including evidence introduced at the motion hearings and at trial. See *Pittman v. State*, 286 Ga. App. 415, 416 (650 SE2d 302) (2007).

tinted and initiated a traffic stop. While Sergeant Mathews did not have a tint meter to measure the level of tint on the truck's windows, the officer backing him up that night, Officer Heather Burbrink, did. She arrived at the scene a few seconds later and determined that the windows were illegally tinted.

When he approached the vehicle, Sergeant Mathews asked Berry for his license and insurance information and noticed that Berry appeared nervous and that "his hands were shaking real bad. He was breathing real heavy to the point where you'd almost see his heart beat through his shirt." Sergeant Mathews then requested and received Berry's consent to search the truck.

Officer Kelly Moss McKinney, who rode with Sergeant Mathews that day, began searching the passenger compartment of the truck and found a loaded revolver, a WD-40 can with a false bottom concealing a small bag of marijuana, and a CD holder containing a digital scale, all within a hidden compartment under the cup holder. In the bed of the truck, a large bag of marijuana was found inside an open bag of dry dog food, and a bag of cocaine was found between the bed liner and the side of the truck.

Berry does not dispute the validity of the original stop based upon the illegally tinted windows, and he does not dispute that he consented to the search of his

vehicle.[3] Instead, he argues that the search conducted by law enforcement officials exceeded the scope of his consent in searching the bed of the truck because it went beyond what a "typical, reasonable person" would have understood the scope of consent to include.

If a driver gives consent to a search of his vehicle while he is being lawfully detained during a traffic stop, his consent eliminates the need for probable cause or a search warrant.[4] However, where, as here, law enforcement officials base their authority to search on a driver's consent, "the scope of the consent must be measured by all of the circumstances and not only by what the person says in response to a request to search."[5] The type, duration, and intrusiveness of the search is limited by the permission granted, and only that which is reasonably understood from the consent may be undertaken.[6] "The standard for measuring the scope of a suspect's

---

[3] See *Cuaresma v. State*, 292 Ga. App. 43, 45-46 (1) (663 SE2d 396) (2008) ("[i]f an officer witnesses a traffic violation, the ensuing stop is never pretextual, regardless of the officer's subjective intentions, and the officer has probable cause to make the stop") (footnote omitted).

[4] *McNeil v. State*, 248 Ga. App. 70, 71 (545 SE2d 130) (2001).

[5] (Footnote omitted.) Id.

[6] *Pincherli v. State*, 295 Ga. App. 408, 412 (1) (c) (671 SE2d 891) (2008).

consent is that of objective reasonableness - what would a typical reasonable person have understood by the exchange between the officer and the suspect?"[7]

In light of all circumstances in this case, a reasonable person would have understood Berry's consent to include a search of the passenger compartment of his truck and the bed of the truck. Prior to requesting consent to search, Sergeant Mathews asked Berry if there was "anything in the vehicle [he] should be concerned with." Given the foregoing statement, Berry would have understood that the officer was interested in discovering if Berry had any illegal or dangerous items within the truck, and that the scope of his consent extended to a search of even hidden compartments in the truck to find contraband.[8] Further, although Berry suggests that

---

[7] (Punctuation and footnote omitted.) *McNeil*, supra.; Accord *State v. Fulgham*, 288 Ga. App. 746 (655 SE2d 321) (2007).

[8] This Court has held that the defendant's knowledge of what the officer was looking for factored into the scope of the consent given. See *Varriano v. State*, 312 Ga. App. 266, 268 (718 SE2d 14) (2011) (because officer explicitly inquired about the presence of drugs and testified that he had consent to search the entire vehicle, the search of passenger's book bag located in back seat of car did not exceed scope of driver's consent to search); *Davis v. State,* 297 Ga. App. 319, 321 (677 SE2d 372) (2009) (since officer placed appellant on notice that he was looking for contraband, officer did not exceed scope of consent to "look in" vehicle by searching trunk of car*).* See also, *Stagg v. State*, 297 Ga. App. 640, 642 (2) (678 SE2d 108) (2009) (defendant's consent to a search of his person for weapons extended to a search of all the contents of his pockets when officer asked if he had any weapons or needles).

the officers caused structural damage to the truck by "ripping out the bed liner of the truck," the evidence adduced at trial showed that the bed liner was a "carpet" type liner along the side of the truck's bed. The open space where the cocaine was found was accessible by simply lowering the tailgate, and no special tools were needed to access the cocaine.[9] Accordingly, we find that the trial court did not abuse its discretion in denying Berry's motion to suppress.

2. Berry next argues that his trial counsel was ineffective because counsel admitted a prejudicial police report into evidence and failed to seek a limiting instruction on its use.

During the motion to suppress and at trial, defense counsel's theory was that the stop of Berry's truck was pretextual and that the officers were not truthful when testifying as to why they stopped his truck. Believing that he had caught Officer John Andrew Jackson, Jr., an officer who arrived to the scene of the traffic stop after the drugs were found, in a lie about the extent to which he had communicated with Officer Mathews about Berry prior to the traffic stop, defense counsel tendered a

---

[9] Compare *Pincherli*, supra at 412-413 (2) (c) (officers did not exceed the scope of the defendant's general consent to search the truck when, upon opening the hood and observing evidence of engine tampering that officers knew from experience had been used to conceal contraband, they asked for consent to do a more thorough search at a repair shop).

report drafted by Officer Jackson into evidence. The report detailed communications between the Officer Mathews and Officer Jackson prior to the stop, but also it described police surveillance, revealing weekly trips by Berry to deliver narcotics, activity indicative of a "drug trade" at Berry's residence, and that a search warrant executed upon Berry's residence revealed 13 ounces of cocaine, a small amount of marijuana, and a firearm. It appears from the transcript of the trial that the report was read in its entirety during the State's closing argument.[10] At the motion for new trial hearing, counsel testified that he intended to use the report to impeach Officer Jackson because he "felt it would be very powerful to have the officer read from his own report and discredit what he had said in his prior statements." However, counsel admitted that he did not intend the entire report to be read to the jury, and that he "should have just let [Officer Jackson] read from [the report] and then take it back as an exhibit. . . . [and that counsel] should not have tendered it." Counsel further testified that he did not have a strategic purpose in failing to request a limiting instruction regarding the police report.

---

[10] Although parties chose not to have the closing arguments transcribed, the trial transcript reflects a colloquy between the trial judge and counsel wherein the trial court granted the State permission to read the exhibit during the closing argument.

7

To prevail on his ineffective assistance claim, Berry "must show that counsel's performance was deficient and that the deficient performance prejudiced the defense."[11] In order to prove the prejudice prong, Berry must show a reasonable probability existed that the result of his trial would have been different, but for his defense counsel's deficient performance.[12] Additionally, Berry must overcome the strong presumption that the representation was effective.[13] The question of ineffectiveness is a mixed one of both law and fact: "we accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts."[14]

As a general matter, this Court is reluctant to reverse a case on the ground of ineffective assistance of counsel when complained-of conduct can reasonably be construed as involving defense counsel's trial strategy.[15] Here, defense counsel

---

[11] (Footnote omitted.) *Suggs v. State*, 272 Ga. 85, 87 (4) (526 SE2d 347) (2000), citing *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[12] *Baggett v. State*, 257 Ga. 735 (1) (363 SE2d 257) (1988).

[13] *Clarington v. State*, 178 Ga. App. 663, 667 (5) (344 SE2d 485) (1986).

[14] (Footnote omitted.) *Suggs*, supra at 88 (4).

[15] *Emilio v. State*, 263 Ga. App. 604, 605 (588 SE2d 797) (2003).

testified that he introduced the police report as an attempt to impeach Officer Jackson's testimony. However, in admitting such evidence, defense counsel also presented the jury with evidence of Berry's other drug-related crimes. Defense counsel failed to redact other damaging portions of the police report that was submitted into evidence and failed to request a limiting instruction from the trial court after it was read to the jury during the closing argument. We have held that defense counsel's failure to redact bad character evidence from a defense exhibit constituted deficient performance, and we rejected the argument that such evidence had been introduced as part of a trial strategy to impeach a witness.[16] Accordingly, we find that "trial counsel's actions constituted deficient performance and that the trial court clearly erred in holding otherwise."[17]

---

[16] See Id. (finding defense counsel's failure to redact bad character evidence stating that defendant was "wanted in five states" from a defense exhibit was deficient performance and rejecting argument that it had been introduced as part of a trial strategy to impeach a witness); *Whitaker v. State*, 276 Ga. App. 226, 227 (622 SE2d 916) (2005) (finding that defense counsel's introduction of an unredacted exhibit showing that defendant had previously been charged with an identical crime and two closely related crimes constituted ineffective assistance, even in light of defense counsel's statement that the evidence was introduced to impeach the State's witness).

[17] (Punctuation and footnote omitted). *Whitaker*, supra at 227.

We turn next to the second prong of the ineffective assistance analysis -- whether Berry was prejudiced by defense counsel's mistake in that there was a reasonable probability that the outcome of the proceedings would have been different but for the mistake. We find that because the evidence that Berry was in possession of the contraband as discussed in Division 1, infra, is overwhelming and independent of the police report in question, there is no reasonable probability that the result of the trial would have been different had the police report not been entered into evidence.[18]

3. Berry next contends that the evidence adduced at trial was insufficient to support his convictions. A driver is presumptively in possession of all items found within his vehicle.[19] Based upon the evidence adduced at trial, as discussed in

---

[18] See *Mann v. State*, 273 Ga. 366, 370-371 (2) (541 SE2d 645) (2001). Compare *Emilio*, supra at 606 (1) (trial counsel's failure to redact bad character evidence that defendant was "wanted in five states" created a reasonable probability that the outcome of the trial would have been different if not for trial counsel's deficient performance when the evidence against defendant was not overwhelming); *Whitaker*, supra at 229 (1) (because evidence against defendant was not overwhelming, there was a reasonable probability that the outcome would have been different but for trial counsel's deficient performance in introducing evidence of defendant's bad character).

[19] See *Johnson v. State*, 195 Ga. App. 577, 578 (394 SE2d 359) (1990).

Division 1, the jury had sufficient evidence to find Berry guilty beyond a reasonable doubt on each of his convictions.[20]

*Judgment affirmed. Miller, P. J., and Branch, J., concur.*

---

[20] Id.; *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).