**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed. (Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008) http://www.gaappeals.us/rules/

**March 25, 2013**

# In the Court of Appeals of Georgia

A12A2216. HINTON v. STATE.

RAY, Judge.

Kenneth George Hinton, James Kennedy Copeny, Jr., and Jaryn Ware were tried together and each convicted of armed robbery,[1] hijacking a motor vehicle,[2] and two counts of possession of a firearm during the commission of a crime;[3] other counts were merged into the aforementioned counts for sentencing purposes. Hinton appeals the denial of his motion for new trial,[4] contending that the evidence adduced at trial

---

[1] OCGA § 16-8-41 (a).

[2] OCGA § 16-5-44.1.

[3] OCGA § 16-11-106.

[4] The appeals of Copeny and Ware already have been decided in *Copeny v. State*, 316 Ga. App. 347 (729 SE2d 487) (2012).

was insufficient to sustain his convictions and that the trial court erred in denying his motion to suppress. For the reasons that follow, we affirm.

When reviewing on appeal whether the evidence was sufficient to sustain a conviction, we consider whether any rational trier of fact could have found the defendant guilty beyond a reasonable doubt, and we view the evidence in the light most favorable to the verdict.[5] We do not weigh evidence or witness credibility, and "[a]ny conflicts or inconsistencies in the evidence are for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the [S]tate's case, we must uphold the jury's verdict."[6]

Here, we adopt the following relevant portion of this Court's statement of facts in our earlier decision involving Hinton's co-defendants:

> Viewed in the light most favorable to the verdict, the evidence in this case shows that the victim met Tinisha Henry when, while driving down a street in Riverdale, the victim saw her walking along the road, stopped to talk with her, and gave his telephone number to her. One evening, Henry called the victim and asked him to meet at a house after he finished work, ostensibly to have a drink. A few hours later, the victim

---

[5] Id. at 347 (1).

[6] (Footnote and punctuation omitted.) *Campbell v. State*, 314 Ga. App. 299, 300 (724 SE2d 24) (2012).

drove to the place to which Henry had directed him, and when he arrived, he saw Henry standing in the street. After he parked and exited his car, the victim was approached by four men. The men were armed, their faces were concealed, and they informed the victim of their intent to rob him. At trial, the victim testified that one of these men was taller than the others, and the tall one wore a white shirt, while the others wore dark clothing. One of the men took cash and a cell phone from the victim, and Henry took the keys to his car. Henry then drove away in the victim's car, a Monte Carlo, and the four men drove away in a Lincoln Town Car.

The victim promptly called law enforcement, and officers were instructed to be on the lookout for both the Monte Carlo and the Town Car. Officers soon located the Monte Carlo and apprehended Henry. Later, officers also located a Town Car and stopped it. Inside the Town Car, the officers found Copeny, Ware, Hinton, and a fourth man, Malcolm Arnold. The victim was taken to the scene of the stop, and he confirmed that the Town Car that officers had stopped was, in fact, the Town Car in which his assailants had driven away. The victim also viewed the occupants of the Town Car. He was unable to definitively identify any of the occupants as one of his assailants, inasmuch as they had covered their faces during the robbery, but the victim told officers that the height, weight, and attire of the occupants of the Town Car was consistent with that of his assailants. An officer testified at trial that,

when the Town Car was stopped, Hinton was wearing a white shirt and was taller than the other occupants, including Copeny and Ware.[7]

Captain Richard Gandee of the Clayton County Police Department took the victim to the location where other officers had stopped the Town Car. Gandee testified that the victim previously had told him that his assailants were black, and when Gandee and the victim arrived at the Town Car, the victim stated that "the tall black male in the white T-shirt is the one that [the victim] recognized the most. And he was actually at the scene with the Lincoln Town Car." At trial, when asked if he could identify any of the men "in particular," the victim responded, "The tall guy with the white T-shirt." The victim further testified that he had been able to observe Hinton during the crimes, as he stood in front of the driver's-side headlight of the Monte Carlo during the robbery. The victim indicated that all the occupants of the car matched his description of the robbers. An officer who interviewed all four defendants testified that three of the men were between five feet seven and five feet nine inches tall, but that Hinton was about six feet two inches tall.

Prior to seeing the occupants or contents of the Town Car, the victim also described the silver and black handguns that had been used in the crime. The Lincoln

[7] *Copeny*, supra at 347-348 (1).

4

Town Car was uninsured, so police impounded the vehicle and inventoried its contents. During the inventory, police found a loaded Bersa Thunder 9 millimeter handgun wrapped in a black, full-face mask, and when officers patted down the car's occupants, they found a loaded Bryco Arms 9 millimeter handgun on Arnold. One gun was black, the other was silver. The officers also found cell phones, including one belonging to the victim; $71 in cash, some jewelry, and clothing including a black hat, black shorts, a black T-shirt, two black hooded sweatshirts, and a black glove.

The four occupants of the Town Car were taken into police custody. While in custody, Hinton indicated to police that he had been in the Town Car on the night at issue and that the car belonged to him.

1. Hinton first contends that the trial court erred because the evidence was insufficient to convict him. Specifically, he argues that the State, in using only circumstantial evidence to identify him as one of the perpetrators, failed to meet its burden of excluding every other reasonable hypothesis except his guilt. We disagree.

> To obtain a conviction on circumstantial evidence, the State must establish not only that the evidence is consistent with guilt, but that the facts exclude every other reasonable hypothesis. In order to support the verdict, the circumstantial evidence need exclude only *reasonable*

hypotheses, not exclude every inference or hypothesis *except* that of the defendant's guilt. Whether circumstances are sufficient in this case to exclude every reasonable hypothesis except that of the defendant's guilt is a question for the jury.[8]

Although the victim did not testify that he was absolutely certain of the robber's identity because the robber's face was partially covered, it is well settled that "the determination of a witness' credibility, including the accuracy of eyewitness identification, is within the exclusive province of the jury."[9]

Here, the evidence shows that Hinton was arrested about an hour and a half after the crimes occurred, in the Lincoln Town Car he admitted that he owned and which the victim had described as being driven by his assailants. The cell phone that the victim had reported stolen was found in Hinton's car. Guns matching the victim's description of the weapons used were found in Hinton's car and on the person of one of Hinton's companions.

---

[8] (Punctuation and footnotes omitted; emphasis supplied.) *Huff v. State*, 281 Ga. App. 573, 575 (636 SE2d 738) (2006). Accord *Dailey v. State*, 271 Ga. App. 492, 494 (1) (610 SE2d 126) (2005) (circumstantial evidence sufficient to exclude other reasonable possibilities, even where victim's identification of defendant was inconclusive, given other inculpatory evidence).

[9] (Citation, footnote, and punctuation omitted.) *Frazier v. State*, 305 Ga. App. 274, 275 (1) (699 SE2d 747) (2010).

We have held that stolen items found in a vehicle create a rebuttable presumption that the owner of the vehicle is in possession of those items.[10] This presumption does not apply when there is evidence that the owner was not in possession of the vehicle for some period prior to the discovery of stolen items, or if the evidence shows that others had equal access to the vehicle.[11] Here, there is no evidence that others were in possession of the vehicle without Hinton, but there is evidence that the other assailants had equal access to the vehicle. Because there also was evidence other than Hinton's ownership of the automobile connecting him with the crimes, however, including the fact that the victim's description of one of the perpetrators matched Hinton's physical characteristics, this was sufficient to sustain the presumption.[12] "Where there is evidence other than 'equal access' connecting an accused to contraband, it is for the jury to determine guilt or innocence."[13]

---

[10] *Elrod v. State*, 128 Ga. App. 250, 251 (1) (196 SE2d 360) (1973).

[11] Id.

[12] Id at 251 (3).

[13] (Citations and punctuation omitted.) *Fears v. State*, 169 Ga. App. 172, 173 (1) (312 SE2d 174) (1983).

7

Contrary to Hinton's assertion on appeal, the combined evidence set forth above was sufficient to authorize a rational jury to find him guilty beyond a reasonable doubt of the charged offenses and to exclude every other hypothesis except for his guilt.[14] Further, the evidence was sufficient to prove beyond a reasonable doubt that Hinton was a party to the crimes charged and was sufficient to authorize a rational jury to exclude every reasonable hypothesis other than his guilt.

> A person who does not directly commit a crime may be convicted upon proof that a crime was committed and that person was a party to it. Moreover, whether a person was a party to a crime can be inferred from his presence, companionship, and conduct before and after the crime was committed. . . . If the defendant had knowledge of the intended crime and shared the criminal intent of the principal actor, he is an aider and abettor.[15]

Here, a jury could readily conclude that Hinton had knowledge of the crimes and shared in the criminal intent of the perpetrators given that he was found in his car with the other assailants, with the guns the victim described, and with the victim's stolen cell phone and other items connected to the crimes. Further, the victim testified

---

[14] *Huff*, supra.

[15] (Citations, punctuation, and emphasis omitted.) *Copeny*, supra at 349 (1) (a).

that a man matching Hinton's description stood in the headlight and watched while the crimes took place.[16] We find no error.

2. Hinton next argues that the trial court erred in denying his motion to suppress because the State used only hearsay evidence to establish the police officer's reasons for believing he could lawfully stop Hinton's car. Specifically, he argues that "the only evidence regarding the reason for the stop was another officer's recitation of a hearsay statement that had been made by the stopping officer." This contention lacks merit.

Although Hinton argues that the stopping officer's conduct was explained by inadmissible hearsay testimony from another officer, the record does not support this.[17] A careful review of the suppression hearing transcript shows that although the officer who stopped Hinton's vehicle did not testify, the officer who did testify,

---

[16] See *Williams v. State*, 236 Ga. App. 790, 792 (513 SE2d 757) (1999) (evidence sufficient to show defendant was party to hijacking where, among other things, he made no effort to distance himself from his cohorts as vehicle was being stolen and offered no help to the victim); *Lewis v. State*, 199 Ga. App. 97, 98 (1) (403 SE2d 814) (1991) (evidence sufficient to find defendant guilty of armed robbery where he arrived at scene with co-defendant, and did not deter co-defendant or assist victim when co-defendant choked and robbed victim).

[17] Hinton did not raise any hearsay objections in this portion of the hearing on the motion to suppress.

Sergeant Stefan Schindler, never testified as to what the stopping officer told him. At the hearing, Schindler testified that he arrived on the scene after Hinton's car was stopped. When asked why the Lincoln Town car was stopped, Schindler, without attributing any of his knowledge to statements by the stopping officer, testified that Hinton's vehicle had been stopped because it had an altered drive-out tag. He further testified that officers on patrol that night had been told via radio dispatches to be on the lookout for an older-model, cream-colored Lincoln Town car with altered drive-out tags, in which four black males were riding. Thus, Hinton's hearsay argument, as crafted, is inapt.

On appeal of the denial of a motion to suppress, we construe the facts in favor of the trial court's findings, uphold those findings unless clearly erroneous, and review de novo the trial court's application of law to the facts.[18] We also consider all relevant evidence of record, including evidence introduced at motion hearings and at trial.[19] At a motion to suppress hearing, the State has the burden of proving the stop was lawful.[20]

---

[18] *Berry v. State*, __ Ga. App. __ (1) (734 SE2d 768, 769-770 (1)) (2012).

[19] Id. at 770 (1), n. 2.

[20] *State v. Hammond,* 313 Ga. App. 882, 883-884 (723 SE2d 89) (2012).

Properly viewed, the evidence presented at the motion to suppress hearing, as outlined above, shows that the State met its burden as to the justification for the initial stop. Although "stopping a car with a drive-out tag *solely* to ascertain whether the driver was complying with our vehicle registration laws is not authorized,"[21] we have held that, as in the instant case, an officer has satisfied the requirement of reasonable, articulable suspicion needed to justify a brief investigative stop where the vehicle has a drive-out tag that has been altered and is invalid.[22] Given the additional information in the radio dispatches about the make, model, and color of the vehicle, and the description of its four occupants, the police also had probable cause, which can rest on the collective knowledge of the police when there is, as here, some degree of communication between them, instead of on the knowledge of the arresting officer alone.[23] Here, the stop was lawful because it was based on reliable information from 911 and police radio dispatches, and was shortly corroborated by officers' sighting of a car and its occupants matching the description provided, giving police reasonably

---

[21] (Punctuation and footnote omitted; emphasis supplied.) *Green v. State*, 282 Ga. App. 5, 7 (1) (637 SE2d 498) (2006).

[22] Id. at 6-7 (2).

[23] *Burgeson v. State*, 267 Ga. 102, 105 (3) (a) (475 SE2d 580) (1996).

trustworthy information sufficient to warrant a prudent person's belief that a suspect had committed an offense.[24] Finally, at the suppression hearing, the trial court properly considered the totality of the circumstances to determine whether officers had probable cause to believe that Hinton had committed an offense.[25] We discern no error.

*Judgment affirmed. Branch, J., concurs, and Miller, P. J., concurs in judgment only.*

---

[24] *Bell v. State*, 291 Ga. App. 169, 172 (3) (661 SE2d 207) (2008). Hinton, citing *Vansant v. State*, 264 Ga. 319, 321 (2) (443 SE2d 474) (1994), argues that the radio dispatch description of the Lincoln was insufficient to support the requisite particularized suspicion necessary justify a vehicle stop. However, this case is distinguishable in that the description in *Vansant* was only of the color and make of the vehicle at issue, and unlike the instant case, did not include a description of the occupants or the vehicle's tag.

[25] *Bell*, supra at 171 (3).